# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2488-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>　　　　　Plaintiff-Respondent-Petitioner,<br>　　v.<br>Timothy L. Finley, Jr.,<br>　　　　　Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 365 Wis. 2d 275, 872 N.W.2d 344)
(Ct. App. 2015 – Published)
PDC No: 2015 WI App 79

| | |
|---|---|
| OPINION FILED: | July 12, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 7, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Brown |
| JUDGE: | William M. Atkinson |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ZIEGLER, J. dissents (Opinion filed).<br>BRADLEY, R. G., J. dissents (Opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the briefs was *Brad D. Schimel*, attorney general.


For the defendant-appellant, there was a brief by *Catherine R. Malchow*, assistant state public defender, and oral argument by *Catherine R. Malchow*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2488-CR
(L.C. No. 2011CF671)

STATE OF WISCONSIN          :        IN SUPREME COURT

**State of Wisconsin,**

      **Plaintiff-Respondent-Petitioner,**

  **v.**

**Timothy L. Finley, Jr.,**

      **Defendant-Appellant.**

**FILED**

**JUL 12, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1 SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, State v. Finley, 2015 WI App 79, 365 Wis. 2d 275, 872 N.W.2d 344. The court of appeals reversed a judgment and order of the Circuit Court for Brown County, William M. Atkinson, Judge, and remanded the cause to the circuit court with directions to permit the defendant, Timothy L. Finley, Jr., to withdraw his plea of no contest to first-degree recklessly endangering safety as domestic abuse.

¶2 The court of appeals ordered the remedy of plea withdrawal, relying on the remedy set forth in State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), for cases in which a circuit court fails to comply with Wis. Stat. § 971.08(1) (2011-12) or other mandatory duties at a plea colloquy and the defendant does not knowingly, intelligently, and voluntarily enter his or her plea.[1]

¶3 Wisconsin Stat. § 971.08(1)(a) provides that before the circuit court accepts a plea of guilty or no contest, it shall, among other things, "address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." Wis. Stat. § 971.08(1)(a) (emphasis added).[2]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[2] Wisconsin Stat. § 971.08(1)(a) provides in relevant part:

(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

State v. Bangert, 131 Wis. 2d 246, 261-62, 389 N.W.2d 12 (1986), sets forth six mandatory duties of circuit courts in accepting a plea. State v. Brown, 2006 WI 100, ¶35, 293 Wis. 2d 594, 716 N.W.2d 906, restates and supplements the mandatory duties set forth in Bangert. Only the circuit court's duty to advise the defendant of the punishment is at issue in the instant case.

¶4 This case involves felonies. Throughout this opinion, we use the statutory phrase "potential punishment" to describe the felony sentencing information a circuit court is required to impart to a defendant under the statute and case law. The phrase "potential punishment" has not been defined in the statutes or the case law. In analyzing whether a defendant was correctly advised of the potential punishment, our cases have looked to the maximum statutory penalty, that is, the maximum sentence provided for by statute. Some cases use the phrase "range of punishments" in addition to or in lieu of the statutory phrase "potential punishment." "Range of punishments," "potential punishment," and "maximum statutory penalty" are used synonymously in the cases.[3] The case law also uses other phrases to mean "potential punishment."[4]

¶5 Wisconsin Stat. § 939.50(3) sets forth the maximum statutory penalty for felonies.[5] Other statutes add enhancements

_____

[3] See, e.g., Brown, 293 Wis. 2d 594, ¶35; Bangert, 131 Wis. 2d at 262; see also State v. Cross, 2010 WI 70, ¶50, 326 Wis. 2d 492, 786 N.W.2d 64 (Abrahamson, C.J., concurring) ("Bangert and Brown interpreted 'potential punishment if convicted' to mean 'the range of punishments to which he [the defendant] is subjecting himself by entering a plea.'") (citing Bangert, 131 Wis. 2d at 261-62; Brown, 293 Wis. 2d 594, ¶35).

[4] See Attachment A, Glossary, at item 4 (collecting cases using the terms "maximum term of imprisonment," "maximum penalty," "maximum potential sentence," "maximum potential imprisonment," "maximum initial sentence," "actual allowable sentence," and "precise maximum sentence" as synonyms of "potential punishment" and "maximum statutory penalty").

[5] Wisconsin Stat. § 939.50(3) provides:

(continued)

3

to the penalties specified in Wis. Stat. § 939.50(3).  For example, there are enhancements for repeat offenses, domestic abuse offenses, and offenses committed with the use of a dangerous weapon.  See, e.g., Wis. Stat. §§ 939.62, 939.621, 939.63.

---

(3) Penalties for felonies are as follows:

(a)  For a Class A felony, life imprisonment.

(b)  For a Class B felony, imprisonment not to exceed 60 years.

(c)  For a Class C felony, a fine not to exceed $100,000 or imprisonment not to exceed 40 years, or both.

(d)  For a Class D felony, a fine not to exceed $100,000 or imprisonment not to exceed 25 years, or both.

(e)  For a Class E felony, a fine not to exceed $50,000 or imprisonment not to exceed 15 years, or both.

(f)  For a Class F felony, a fine not to exceed $25,000 or imprisonment not to exceed 12 years and 6 months, or both.

(g)  For a Class G felony, a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both.

(h)  For a Class H felony, a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both.

(i)  For a Class I felony, a fine not to exceed $10,000 or imprisonment not to exceed 3 years and 6 months, or both.

¶6 This opinion uses the phrase "maximum statutory penalty" interchangeably with the statutory phrase "potential punishment." We do so because, as already explained, our cases refer to the "maximum statutory penalty" (or similar phrase) in describing potential punishment. Furthermore, the issue in the instant case is the remedy when the circuit court misstates the potential punishment by telling the defendant an incorrect maximum statutory penalty for his offense.

¶7 Before we continue, we note that circuit courts, the court of appeals, and this court have not used consistent terminology in discussing the duty of circuit courts to advise a defendant of the potential punishment before accepting a plea. We have therefore appended a glossary of terms to assist the reader and the courts in using and understanding the correct terminology. Throughout our opinion, terms that are included in the glossary are identified by an asterisk to call attention to their meaning, a meaning that may not be obvious to the reader.[6] The glossary includes references to statutes and case law that should be consulted for further and more precise information.

¶8 The "potential punishment," that is, the maximum statutory penalty Finley faced in entering his plea, is 23 years, 6 months' imprisonment.[*] The circuit court advised Finley during the plea colloquy accepting Finley's no contest plea that

---

[6] We do not use an asterisk each time we use the statutory phrase "potential punishment" or "maximum statutory penalty" because these terms have been defined in the text. See supra ¶4.

the potential punishment was confinement[*] in prison for 19 years, 6 months rather than imprisonment[*] for 23 years, 6 months. Nowhere in the circuit court record was this misinformation corrected. Thus, the circuit court misstated the potential punishment if Finley were convicted.

¶9 The issue presented in the instant case does not focus on <u>whether</u> the circuit court erred during the plea colloquy by misstating the potential punishment. The State concedes that the circuit court erred.[7] Instead, the focus in the instant case is on the <u>remedy</u> for the circuit court's misstatement of the potential punishment if convicted, when Finley lacked knowledge of the potential punishment. Thus, we are reviewing the plea colloquy in the instant case in a unique posture——we are asked to decide what remedy should be provided in the circumstances of the instant case.

¶10 The State's petition for review and the parties' briefs state the issue of the remedy as follows: When a defendant who pleads guilty or no contest is misinformed that

---

[7] The State acknowledges that the circuit court misinformed Finley about the potential punishment he faced if convicted. The State also acknowledges that it was not able to prove (after being given the opportunity to do so at an evidentiary hearing) that Finley knew the maximum statutory penalty when he entered his plea. As the State put it in its opening brief, "The issue on this appeal is <u>not</u> whether Finley knew the correct maximum penalty. The state has acknowledged <u>that he did not</u>. The record shows that Finley was erroneously informed and believed that the maximum penalty was 19.5 years rather than the actual maximum of 23.5 years." Brief of Plaintiff-Respondent-Petitioner at 7-8 (emphasis added).

the maximum statutory penalty is lower than the maximum actually allowed by law, and the sentence imposed is more than the defendant was told he could get, can the defect be remedied by reducing the sentence to the maximum the defendant was informed and believed he could receive instead of letting the defendant withdraw his plea?[8]

¶11 This court has advised circuit courts of the importance of discharging the statutorily and judicially mandated requisites of the plea colloquy: "The faithful discharge of these duties is the best way we know for courts to demonstrate the critical importance of pleas in our system of justice and to avoid constitutional problems."[9]

¶12 A violation of Wis. Stat. § 971.08(1)(a) may have constitutional ramifications.[10] A defendant's understanding of

---

[8] The parties view this case as presenting a fact situation in which the circuit court understated the potential punishment if convicted. One may, however, view the circuit court as having overstated the potential punishment if convicted. The record shows that Finley was erroneously informed that he faced a potential punishment of 19 years, 6 months of confinement in prison.[*] The actual maximum statutory penalty was 23 years, 6 months of imprisonment,[*] consisting of 18 years, 6 months of confinement in prison[*] and 5 years of extended supervision.[*]

Whether the circuit court's statement of the potential punishment should be characterized as having over or understated the potential punishment is not relevant to the disposition of the instant case. See infra ¶¶88-95.

[9] Brown, 293 Wis. 2d 594, ¶23 (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969)).

[10] See Bangert, 131 Wis. 2d at 261 n.3 ("A violation of section 971.08, though itself not constitutionally significant, may have constitutional ramifications.").

7

the potential punishment if convicted is relevant for determining whether the plea was knowingly, intentionally, and voluntarily entered.[11] "The United States Constitution sets forth the standard that a guilty or no contest plea must be <u>affirmatively</u> shown to be knowing, intelligent, and voluntary."[12]

¶13 The court has declared that "[w]hen a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'"[13]

¶14 The State argues that Finley entered his plea knowingly, intelligently, and voluntarily <u>in the constitutional sense</u> because his sentence was ultimately reduced (commuted)[14] to the maximum penalty of which he was advised. The State is proposing a novel interpretation of the due process requirement

---

[11] In <u>Bangert</u>, the court stated that "[a]lthough section 971.08 is not a constitutional imperative, the procedure of the statute nevertheless is designed to assist the trial court in making the constitutionally required determination that a defendant's plea is voluntary." 131 Wis. 2d at 261 (citing <u>McCarthy v. United States</u>, 394 U.S. 459, 465 (1969)).

[12] <u>Brown</u>, 293 Wis. 2d 594, ¶25 (citing <u>Bangert</u>, 131 Wis. 2d at 260) (emphasis in original).

[13] <u>Brown</u>, 293 Wis. 2d 594, ¶19 (quoting <u>State v. Van Camp</u>, 213 Wis. 2d 131, 139, 569 N.W.2d 577 (1997)). <u>See also</u> <u>State v. Cross</u>, 2010 WI 70, ¶20, 326 Wis. 2d 492, 786 N.W.2d 64.

[14] We use the phrase "reduced (commuted)" because the parties use both "reduced" and "commuted" in discussing the remedy in the instant case. As we explain further below, the use of the word "commuted" is apparently derived from Wis. Stat. § 973.13, a statute that is not implicated in the instant case. <u>See</u> <u>infra</u> n.31.

that a plea be entered knowingly, intelligently, and voluntarily, without support in the United States Supreme Court's case law.

¶15 The following exchange at oral argument is instructive regarding the State's position in the instant case and the focus of the parties and this court on the remedy for the circuit court's misstatement to Finley:

> State:    And I want -- and as long as you're bringing that up, I made this absolutely clear in my petition for review, I made this absolutely clear in my brief, . . . we are not contesting Finley's assertion that his plea was not . . . entered with an understanding of the correct maximum penalty.
>
> Justice Ziegler: That's the question, why are you conceding that? . . . .    Counsel that's really the question that's behind these questions, if I'm reading my colleagues correctly . . . .    I'm just asking why you're conceding that.  That's really what's behind their questions I think.  Why are you making that concession?
>
> State:    Because the evidence -- and I want to make clear what we are conceding, that's my whole point -- I am not . . . conceding that this plea was not knowingly entered, I am absolutely not conceding that.  That's my entire argument, that it was knowingly entered.  What I am conceding is that the defendant did not know the correct maximum penalty when he pleaded guilty.
>
> Justice Ziegler: Well, how can you knowingly, intelligently, and voluntarily plead if you don't know the penalty to which you plead?
>
> State:    You can do it if you know the penalty that you actually get, and that is the whole point of my argument.  If you are told that

> you can get a certain penalty . . . and understand that you can get that penalty when you plead guilty, and you in fact wind up getting that penalty that you know you could get when you plead guilty, your plea is in fact knowing in the constitutional sense. Now there's an error, no question about that, and we're conceding this, there is an error, he was misadvised of the correct maximum penalty, but that error was harmless. It was harmless because he did not get the actual maximum.

¶16 In addressing the remedy for the circuit court's misstating the potential punishment Finley faced if convicted, Finley relies on Bangert, "a timeless primer on the foundation principles of the plea colloquy,"[15] and State v. Brown, 2006 WI 100, ¶¶22, 34, 293 Wis. 2d 594, 716 N.W.2d 906, which "reexamine[d] the legal tenets fundamental to guilty pleas" and "restate[d] and supplement[ed] the Bangert outline."

¶17 Bangert and Brown are the seminal cases analyzing the requirements for plea colloquies set forth in Wis. Stat. § 971.08(1) and the case law, as well as the remedy when a defendant entered his plea not knowing the information (here the potential punishment) that circuit courts are required to impart to a defendant.

¶18 Finley argues that under Bangert and Brown his failure to know the potential punishment if convicted (after the State

---

[15] See Brown, 293 Wis. 2d 594, ¶24.

was given the opportunity to prove at an evidentiary hearing what he knew) entitles him to withdraw his plea.[16]

¶19 In contrast, relying on State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, and State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482, the State contends that plea withdrawal is not the sole remedy when a defendant is misinformed about the potential punishment he faces and alleges that he did not know the potential punishment when he entered his plea. The State argues that the proper remedy in the instant case and others like it is reduction (commutation) of the sentence to the potential punishment the defendant was told he could receive.[17] In the instant case, the State argues the

---

[16] See Brown, 293 Wis. 2d 594, ¶6 ("If the State cannot prove by clear and convincing evidence that Brown understood the nature of the charges and the constitutional rights he gave up, the circuit court shall grant Brown's motion to withdraw his guilty pleas."); Bangert, 131 Wis. 2d at 274 ("Whenever the Section 971.08 procedure is not undertaken or whenever the court-mandated duties are not fulfilled at the plea hearing, the defendant may move to withdraw his plea.").

[17] The State's brief (Brief for Plaintiff-Respondent-Petitioner) at page 8 asserts: "The single issue presented for decision is whether the only remedy for this error is plea withdrawal, or whether the error can be better remedied by reduction of [the defendant's] sentence to the maximum penalty he was informed and believed he could receive."

In a very different context than the instant case, this court concluded that due process required a defendant be permitted to keep the sentence he was told he could receive (and did receive). See State v. Chamblis, 2015 WI 53, ¶¶54-55, 362 Wis. 2d 370, 864 N.W.2d 806.

(continued)

11

circuit court correctly reduced Finley's sentence from the maximum statutory penalty, 23 years, 6 months' imprisonment,[*] to 19 years, 6 months' imprisonment[*] (even though during the plea colloquy the circuit court advised Finley that he was subject to 19 years, 6 months' confinement in prison[*]).

¶20 Upon consideration of Bangert, Brown, Cross, and Taylor, for the reasons set forth we conclude that under the

---

In State v. Chamblis, the defendant was advised of the correct potential punishment for the charged offense prior to entering a guilty plea. Chamblis, 362 Wis. 2d 370, ¶1. After his plea was entered and he was sentenced, however, the State appealed, arguing that the circuit court should have considered evidence showing the defendant should have faced a more serious charge with a higher potential punishment. Chamblis, 362 Wis. 2d 370, ¶2.

The State argued that the remedy for the circuit court's failure to consider the evidence of the more serious charge should be mandatory plea withdrawal. Chamblis, 362 Wis. 2d 370, ¶53. The defendant argued he should be permitted to keep the sentence he received and that he did not seek plea withdrawal. Chamblis, 362 Wis. 2d 370, ¶52.

The court agreed with the defendant, holding that forcing the defendant to withdraw his plea and face a more serious charge with a higher potential punishment would violate due process. Chamblis, 362 Wis. 2d 370, ¶54.

12

circumstances of the present case, Bangert and Brown govern. Finley is entitled to withdraw his plea.[18]

¶21 Accordingly, we affirm the decision of the court of appeals and remand the cause to the circuit court, as did the court of appeals, with instructions to grant Finley's motion to withdraw his plea.

I

¶22 The facts and lengthy procedural history are not in dispute for purposes of this review. Since sentencing, the instant case has been before the circuit court twice and the court of appeals twice. The circuit court held two postconviction hearings——one non-evidentiary and the other evidentiary——and the court of appeals has twice reversed the circuit court's denials of Finley's motion for withdrawal of his plea.

¶23 We discuss the proceedings before the circuit court and the court of appeals because these proceedings are relevant to our resolution of the instant case.

---

[18] Some members of the court have in previous cases expressed concern that there should be (at least in certain circumstances) a time limit on motions for plea withdrawal. See, e.g., State v. Romero-Georgana, 2014 WI 83, ¶67 n.14, 360 Wis. 2d 552, 849 N.W.2d 668 (suggesting that a time limit may be necessary for motions for plea withdrawal based on Wis. Stat. § 971.08(2)). We do not address whether there is such a time limit for motions for plea withdrawal because Finley's motion for plea withdrawal is timely. Finley filed his motion for plea withdrawal less than two months after the circuit court entered its amended judgment of conviction.

13

¶24 We begin with the criminal complaint. Finley was charged with four counts stemming from an assault of his girlfriend: (1) first-degree reckless endangerment with use of a dangerous weapon; (2) substantial battery; (3) strangulation and suffocation; and (4) false imprisonment.[19] The four counts were charged as acts of domestic abuse.

¶25 Pursuant to a plea agreement, Finley agreed to plead no contest to the first count, first-degree reckless endangerment as domestic abuse with enhancers for habitual criminality and use of a dangerous weapon. In exchange, the State agreed that the remaining charges would be dismissed and read in, and that the State would cap its sentencing recommendation at ten years' initial confinement.[*]

¶26 The maximum statutory penalty of imprisonment[*] (with applicable enhancers) Finley faced if convicted was 23 years, 6 months.

---

[19] The criminal complaint stated the potential punishment for the first count, first-degree reckless endangerment with use of a dangerous weapon, was a fine of not more than $25,000, "imprison[ment of] not more than twelve (12) years and six (6) months, or both." The criminal complaint also noted that "the maximum term of imprisonment for the felony may be increased by not more than 5 years" for the use of a dangerous weapon.

In the information, the State listed the potential punishments identified in the criminal complaint and added a habitual criminality enhancer under Wis. Stat. § 939.62(1)(c). Based on Finley's prior convictions, this enhancement could increase "the maximum term of imprisonment for the underlying crime . . . by not more than 6 years."

14

¶27 On at least two occasions in the circuit court proceedings, however, Finley was misinformed that he faced potential punishment of 19 years, 6 months' confinement.[*] The plea questionnaire/waiver of rights form stated (with emphasis added) that Finley faced "19 years, 6 months confinement . . . ."[*] The circuit court's misstatement of the potential punishment referred to both "confinement"[*] and "imprisonment,"[*] which have different meanings.

¶28 First, the plea questionnaire/waiver of rights form completed by the Finley's attorney and signed by Finley incorrectly stated the potential punishment was "19 years, 6 months confinement."[*]

¶29 Second, before accepting Finley's no contest plea, the circuit court engaged in a colloquy with Finley regarding the potential punishment he faced if convicted. The colloquy (repeated here with emphasis added) advised Finley of each of the component parts of the potential punishment Finley faced if convicted and referred (without explaining the use of the terms) to two different concepts——imprisonment[*] and confinement[*]——as follows:[20]

Court:   The maximum penalty for the offense would be a fine of not more than $25,000 or imprisonment[*] not more than twelve years and six months or both.

_____

[20] The pre-sentencing investigation report, completed after the circuit court had already accepted Finley's plea, similarly stated the potential punishment broken down into its component parts.

15

Finley:     Yes, sir.

Court:      Okay.  I take it -- are we pleading as a repeater?

State:      Yes, Your Honor.

Court:      Okay.  That will be the <u>base penalty</u>.  Then because you are a repeater, then they could <u>increase</u> the <u>incarceration period</u>[21] by not more than an <u>additional six years</u>.  And they are basing the repeater enhancement provision on the fact that you were convicted of possession of cocaine as a subsequent offender, and possession of THC as a subsequent offender on September 12th, 2008, in Brown County.  Do you remember those felonies?

Finley:     Yes, sir.

Court:      Okay.  And they are also charging that you used a dangerous weapon.  And for the <u>enhancement provision of using a dangerous weapon</u> then the <u>term of imprisonment</u>[*] can be <u>increased</u> by not more than <u>five years</u> for that.  Do you understand that then?

Finley:     Yeah.

¶30 Immediately following this piecemeal recitation of the component parts of the potential punishment, the circuit court incorrectly totaled the component parts of the potential punishment (with emphasis added) informing the defendant of only the term of confinement:[*]

Court:      All right.  <u>So, the maximum you would look at then [is] nineteen years six months</u>

---

[21] "Incarceration period" is not a defined term in the statutes.  It might be interpreted to mean the statutory words "imprisonment"[*] or "confinement in prison."[*]

confinement.* Do you understand the maximum penalties?

Finley: Yes, sir.

¶31 Adding these penalties and enhancements together——the 12 year, 6 month base penalty, the 6 year repeater enhancement, and the 5 year dangerous weapon enhancement——yields the maximum statutory penalty if convicted of 23 years, 6 months' imprisonment.*

¶32 Neither the circuit court, the prosecuting attorney, defense counsel, nor Finley corrected the circuit court's misstatement of Finley's potential punishment if convicted.

¶33 Subsequently, at the sentencing hearing, the circuit court imposed the maximum statutory penalty of 23 years, 6 months' imprisonment* (divided between 18 years, 6 months' initial confinement* and five years' extended supervision*).

¶34 After sentencing, Finley moved to withdraw his plea, arguing that he was misinformed, when he entered his plea, of the potential punishment he faced if convicted and that he did not know the potential punishment.[22] As a result, Finley sought

---

[22] Bangert and Brown set forth the procedures applicable when a defendant seeks plea withdrawal based on an alleged violation of a circuit court's statutory or other mandatory duties pertaining to the taking of a defendant's plea.

First, the defendant must make a prima facie case showing that his or her plea was accepted without the circuit court's compliance with Wis. Stat. § 971.08 or other mandatory procedures. Bangert, 131 Wis. 2d at 274.

Second, the defendant must allege that he or she did not "know or understand the information that should have been provided at the plea hearing." Brown, 293 Wis. 2d 594, ¶39.

(continued)

17

plea withdrawal on the grounds that his plea was not entered knowingly, intelligently, and voluntarily.  In the alternative, Finley requested reduction (commutation) of his sentence to the maximum sentence he was told he could receive, 19 years and 6 months.

¶35 The circuit court held a non-evidentiary hearing on Finley's motion.  The State argued that Finley had not stated a prima facie violation of the statutory or judicially mandated plea hearing procedure, that is, the State argued that no Bangert violation occurred.

¶36 Finley argued that he had stated a prima facie Bangert violation:  The transcript of the plea colloquy demonstrated that the circuit court misinformed him of the maximum statutory penalty and that defense counsel misinformed him of the maximum statutory penalty in the plea questionnaire/waiver of rights form.  Finley alleged that he was unaware of the potential punishment he faced if convicted.

¶37 The circuit court denied Finley's motion to withdraw his plea, holding that he failed to state a prima facie Bangert violation because he was correctly advised of each of the

---

When the defendant has made a prima facie showing and adequately alleged that he or she did not know or understand the information that should have been provided at the plea hearing, the burden shifts to the State to show by clear and convincing evidence that the defendant's plea was knowingly, intelligently, and voluntarily entered despite the inadequacy of the record when the plea was entered.  See Brown, 293 Wis. 2d 594, ¶40 (citing Bangert, 131 Wis. 2d at 274).

component parts of the 23 year 6 month maximum potential punishment of imprisonment.[*] As the circuit court put it:

> I'm satisfied the defendant has not made a prima facie case that the plea was made anything but knowingly and voluntarily. I think he knew fully well. I think if you look at that transcript, I went piecemeal by piecemeal, twelve point five, five, six, I went through exactly why it was being added on. He knew his base and he knew exactly each reason why the numbers would be added on. They are consistent with the information placed in the information.
>
> Now, in essence what he wants to claim is, oh, in that case it should get me out of this plea. I think where the information is provided clearly orally, and I think I'm required to provide the length of the sentence orally . . . I think I'm required actually to tell him what his maximum penalty is orally on the offense.
>
> So, I orally have him sitting in that chair exactly right there. We are this distance apart, and I went over the base penalty and the reason why he was receiving each of the enhancements and what the enhancement was. Now, clearly he hasn't made a prima facie case to this Court that he didn't make that plea knowingly and voluntarily.

¶38 Finley appealed the circuit court's denial of his motion. The court of appeals reversed and remanded the matter to the circuit court in an unpublished per curiam decision.[23]

¶39 In this first appeal to the court of appeals, the court of appeals held that Finley had established a <u>Bangert</u> violation as a matter of law: (1) Finley made a prima facie showing that both the circuit court and defense counsel

---

[23] <u>See</u> <u>State v. Finley</u>, No. 2013AP1846-CR, unpublished slip op., ¶16 (Wis. Ct. App. Mar. 18, 2014).

19

misinformed him of the potential punishment he faced if convicted; and (2) Finley alleged that he did not know or understand the information regarding the potential punishment——information that should have been provided to him at the plea hearing.[24]

¶40 The court of appeals also rejected as undeveloped the State's arguments that "'[t]he present case involves small deviations [from the correct maximum potential punishment] that are insufficient to establish a prima facie Bangert violation,'" and that Finley should be presumed to have understood the potential punishment, based on the circuit court's recitation of the component parts of the maximum statutory penalty.[25]

¶41 As the court of appeals explained, the State's argument that Finley was correctly advised of the potential punishment he faced by pleading no contest would require Finley to do more than simply add up the parts of the sentence listed

---

[24] See Finley, No. 2013AP1846-CR, unpublished slip op., ¶16 (citing Brown, 293 Wis. 2d 594, ¶21).

> A defendant is entitled to an evidentiary hearing on a motion to withdraw a guilty plea when (1) the defendant makes a prima facie showing that the circuit court's plea colloquy did not conform with § 971.08 or other procedures mandated at a plea hearing; and (2) the defendant alleges he did not know or understand the information that should have been provided at the plea hearing.

Brown, 293 Wis. 2d 594, ¶2 (citations omitted).

[25] See Finley, No. 2013AP1846-CR, unpublished slip op., ¶¶8-13.

20

by the circuit court. Instead, Finley would have to first recognize and differentiate between numerous undefined terms used by the circuit court (i.e., "maximum penalty," "imprisonment,"[*] "base penalty," "incarceration period," "enhancement," "term of imprisonment," and "confinement"[*]), then add up the component parts listed by the circuit court, finally disregarding the circuit court's statement that he faced "nineteen years six months confinement."[26]

¶42 The court of appeals concluded: "Thus, even if the GED-holding Finley was sophisticated enough to do the math himself, he, and we, would have to conclude that he knew better than both his attorney and the court."[27]

¶43 As a result, the court of appeals "remand[ed] [the matter to the circuit court] to allow the State the opportunity to prove that Finley nonetheless knew the maximum [statutory] penalty he faced at the time he entered his plea."[28]

¶44 On remand, the circuit court held an evidentiary hearing on Finley's motion to withdraw his plea. At the hearing, as Bangert directs, the State bore the burden of proving, by clear and convincing evidence, that Finley knew the

---

[26] Finley, No. 2013AP1846-CR, unpublished slip op., ¶12.

[27] Finley, No. 2013AP1846-CR, unpublished slip op., ¶12.

[28] Finley, No. 2013AP1846-CR, unpublished slip op., ¶16.

21

potential punishment he faced despite the inadequacy of the record at the time of the plea acceptance.[29]

¶45 As the court of appeals put it, "[T]he State's efforts with regard to this directive were minimal; so much so that, on appeal, the State has now abandoned any argument that it met its burden, at least with respect to Finley's knowledge, at the time he pled, of the correct maximum penalty he faced."[30]

¶46 At the evidentiary hearing, the State called just one witness, Finley's defense counsel. Finley did not testify. Defense counsel testified that his usual practice was to cover the maximum statutory penalty with a defendant when discussing a plea offer and that he believed Finley was aware of the potential punishment he faced if convicted. On cross-examination, however, defense counsel stated as follows:

Q:   Would it be your practice when meeting with your client to go through the plea questionnaire line by line?

A:   Yes.

Q:   And when you got to the understandings, would it be your practice to read off for him the "nineteen years six months confinement?"

A:   Yes.

---

[29] "In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him." Bangert, 131 Wis. 2d at 275 (citation omitted).

[30] Finley, 365 Wis. 2d 275, ¶21.

¶47 Moreover, trial counsel stated that he had no specific recollection of advising Finley of the maximum statutory penalty.

¶48 Although Finley's postconviction motion argued primarily for plea withdrawal, Finley included an alternative argument that his sentence should be reduced (commuted) to the maximum he thought he could receive, 19 years 6 months, based on Taylor. Finley withdrew this alternative argument at the hearing, stating that plea withdrawal "is the only claim that we are making."

¶49 Despite Finley's withdrawal of the reduction (commutation) request, the circuit court concluded that Finley "is entitled to have his sentence modified to no more than the amount that was represented to him by the Court and stated on his Plea Questionnaire and Waiver of Rights Form and that was nineteen years and six months." After reducing Finley's sentence from the maximum statutory penalty of 23 years, 6 months' imprisonment to 19 years, 6 months' imprisonment, the circuit court denied Finley's motion for plea withdrawal.

¶50 Although the circuit court made minimal findings at the evidentiary hearing, the circuit court subsequently issued a more fully developed written decision/order reducing Finley's sentence and denying Finley's motion for plea withdrawal. In the circuit court's written decision/order, the circuit court found "that the State met its burden of establishing that Finley knew the maximum penalty he faced at the time he entered his plea. However, the Court also believes that it is in the

23

interest of justice to commute Finley's sentence to the maximum represented to him by the Court at the time of sentencing."

¶51 In reducing (commuting) Finley's sentence and denying Finley's motion to withdraw his plea, the circuit court relied on this court's decisions in Bangert, Cross, and Taylor as well as Wis. Stat. § 973.13.[31]

¶52 Again, Finley appealed the circuit court's denial of his motion for plea withdrawal. In this second appeal, Finley asserted that the circuit court erred in finding that the State had met its burden of proving, by clear and convincing evidence, that Finley knew the potential punishment he faced when he entered his plea.

¶53 In the second appeal in the court of appeals, the court of appeals viewed the State as having abandoned the argument that it satisfied its burden of establishing that

---

[31] Finley appears to fall outside the plain text of Wis. Stat. § 973.13. The provision states:

> In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.

In the instant case, the circuit court imposed the maximum statutory penalty, 23 years, 6 months' imprisonment. The circuit court did not impose a maximum penalty in excess of that authorized by law, despite what the circuit court stated at the plea colloquy.

24

Finley knew, when he entered his plea, the potential punishment he faced if convicted.[32]

¶54 The court of appeals reversed the circuit court's decision/order denying Finley's motion for plea withdrawal; this is the published decision that we are now reviewing.[33] The court of appeals relied on its previous conclusion that Finley had established a Bangert violation as a matter of law as well as the State's concession that it failed, at the evidentiary hearing, to show that despite the Bangert violation Finley knew, when he entered his plea, the potential punishment he faced if convicted.

¶55 The court of appeals discussed the State's reliance on Cross and Taylor at length and distinguished these cases from the instant case. According to the court of appeals, because Finley's plea was not entered knowingly, intentionally, and voluntarily, the Bangert violation was not curable after the fact by reducing (commuting) the sentence to the maximum amount Finley was told that he faced if convicted. The court of appeals remanded the matter to the circuit court with instructions to grant Finley's motion for plea withdrawal.

¶56 This court granted the State's petition for review.

---

[32] Finley, 365 Wis. 2d 275, ¶3. The court of appeals also concluded that the State had conceded that it did not satisfy its burden at the evidentiary hearing in the circuit court. Finley, 365 Wis. 2d 275, ¶9.

[33] See State v. Finley, 2015 WI App 79, ¶37, 365 Wis. 2d 275, 872 N.W.2d 344.

25

II

¶57 Whether a plea colloquy violates Wis. Stat. § 971.08 or other mandatory duty is a question of law that this court determines independently of the circuit court or court of appeals but benefiting from their analyses.[34]

¶58 When a defendant seeks to withdraw a guilty or no contest plea after sentencing, he or she must prove by clear and convincing evidence that refusing to allow plea withdrawal would result in a "manifest injustice."[35] One way to show manifest injustice is to show that the plea was not entered knowingly, intelligently, and voluntarily.[36]

¶59 Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact.[37] An appellate court upholds the circuit court's findings of historical fact unless they are clearly erroneous.[38] This court independently determines as a matter of law whether the circuit court's findings of historical fact demonstrate that the

---

[34] Brown, 293 Wis. 2d 594, ¶21; see also Taylor, 347 Wis. 2d 30, ¶26.

[35] Brown, 293 Wis. 2d 594, ¶18; see also Taylor, 347 Wis. 2d 30, ¶24.

[36] Brown, 293 Wis. 2d 594, ¶18; see also Taylor, 347 Wis. 2d 30, ¶24.

[37] State v. Dillard, 2014 WI 123, ¶38, 358 Wis. 2d 543, 859 N.W.2d 44 (citing Cross, 326 Wis. 2d 492, ¶14).

[38] Dillard, 358 Wis. 2d 543, ¶38 (citing State v. Dawson, 2004 WI App 173, ¶7, 276 Wis. 2d 418, 688 N.W.2d 12).

defendant's plea was knowing, intelligent, and voluntary, while benefiting from the analyses of the circuit court and the court of appeals.[39]

¶60 Determining the remedy when the State fails to demonstrate that it met the constitutional requirement that the defendant knowingly, intelligently, and voluntarily entered his plea presents a question of law. Withdrawal of the plea is a matter of right under these circumstances.[40]

III

¶61 We begin by examining the remedies the State and Finley propose in the instant case. As we explained previously, in the State's view, a plea is knowing, intelligent, and voluntary <u>in the constitutional sense</u> (as the State views this phrase) even if the defendant is misinformed about the potential punishment if convicted, so long as the sentence the defendant

---

[39] <u>Dillard</u>, 358 Wis. 2d 543, ¶38 (citing <u>State v. Hoppe</u>, 2009 WI 41, ¶61, 317 Wis. 2d 161, 765 N.W.2d 794).

[40] <u>See</u> <u>Bangert</u>, 131 Wis. 2d at 283 ("When a defendant established a denial of a relevant constitutional right, withdrawal of the plea is a matter of right."); <u>Brown</u>, 293 Wis. 2d 594, ¶19 ("When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'") (quoting <u>Van Camp</u>, 213 Wis. 2d at 139); <u>see also</u> <u>Cross</u>, 326 Wis. 2d 492, ¶20 ("If the State cannot meet its burden [of proving by clear and convincing evidence that the plea was knowing, voluntary, and intelligent despite the deficiencies of the plea hearing,] the defendant is entitled to withdraw his plea as a matter of right.") (citing <u>Van Camp</u>, 213 Wis. 2d at 139).

ultimately receives does not exceed the maximum sentence the circuit court told the defendant he could receive.

¶62 The State urges that this remedy of reducing (commuting) the sentence to fit what the defendant was told he faced is appropriate in the instant case.

¶63 According to the State, Finley knew, based on the circuit court's colloquy, that he faced a sentence of 19 years, 6 months' confinement in prison.[*] The circuit court ultimately imposed a sentence of 19 years, 6 months' imprisonment[*] (after his Bangert motion and a successful appeal). The State concludes that this reduction (commutation) remedy is appropriate: Finley knowingly, intelligently, and voluntarily entered a plea that he knew exposed him to a potential punishment of 19 years, 6 months' confinement in prison,[*] and he ultimately received a sentence of 19 years, 6 months' imprisonment,[*] which is less than 19 years, 6 months' confinement in prison.[*]

¶64 The State asserts that State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, and State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482, suggest that when a defendant is misinformed about the potential punishment, sentence reduction (commutation) is an appropriate remedy.

¶65 Thus, we examine Cross and Taylor to determine whether they govern the instant case.

¶66 We begin with Cross. Prior to entering a guilty plea, the defendant was misinformed by the State, the circuit court, and Cross's attorney that he faced a higher potential punishment

28

than the law actually authorized——40 years' imprisonment[*] with a maximum initial confinement[*] of 25 years, rather than the 30 years' imprisonment[*] with 20 years' maximum initial confinement[*] set forth in the statute.[41]

¶67 After the circuit court imposed a sentence of 40 years imprisonment,[*] Cross discovered that his offense should have carried a maximum penalty of 30 years' imprisonment[*] with 20 years' maximum initial confinement.[*][42]

¶68 Cross moved to withdraw his plea, arguing that it was not knowingly, intelligently, and voluntarily entered because he was misinformed of a higher potential punishment than was allowable by statute and was unaware of the potential punishment.[43] Cross sought an evidentiary hearing under Bangert. The circuit court denied an evidentiary hearing and Cross's motion to withdraw his plea.[44] The circuit court resentenced Cross to the correct maximum statutory penalty.[45]

¶69 On appeal to this court, Cross argued that he had made a prima facie showing of a Bangert violation because the potential punishment was incorrectly communicated and he was unaware of the potential punishment if convicted. Cross argued

---

[41] Cross, 326 Wis. 2d 492, ¶1.

[42] Cross, 326 Wis. 2d 492, ¶¶10-11.

[43] Cross, 326 Wis. 2d 492, ¶11.

[44] Cross, 326 Wis. 2d 492, ¶12.

[45] Cross, 326 Wis. 2d 492, ¶12.

that under these circumstances his plea was not knowingly, intelligently, and voluntarily entered and that he was entitled to withdraw his plea as a matter of right.

¶70 This court disagreed with Cross. The court concluded that it is not necessarily a Bangert violation when a defendant is told that he faces a higher "but not substantially higher" potential punishment than is, in fact, available.[46] The Cross court stated that although the circuit court misinformed Cross about the maximum statutory penalty, the circuit court had "fulfilled its duty to inform the defendant of the range of punishments;"[47] that Cross understood the potential punishment;[48] and that the plea was knowingly, intelligently, and voluntarily entered.[49] The Cross court also concluded that "a defendant's due process rights are not necessarily violated when he is incorrectly informed of the maximum potential imprisonment."[50] As the Cross court noted, "[w]hen given a greater sentence than that authorized by law, which presumably would also involve an error in the understanding of the possible maximum penalty, the

---

[46] Cross, 326 Wis. 2d 492, ¶30.

[47] Cross, 326 Wis. 2d 492, ¶4.

[48] Cross, 326 Wis. 2d 492, ¶41.

[49] Cross, 326 Wis. 2d 492, ¶41.

[50] Cross, 326 Wis. 2d 492, ¶37.

30

remedy here is a commuted sentence, not plea withdrawal," under Wis. Stat. § 973.13.[51]

¶71  To quote Cross,

> [A] defendant can be said to understand the range of punishments as required by § 971.08 and Bangert when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence.  This accords with common sense; not all small deviations from the requirements in our Bangert line of cases equate to a Bangert violation and require a formal evidentiary hearing.[52]

As a result, the court in Cross did not allow the defendant to withdraw his plea.

¶72  The Cross court did, however, qualify its conclusion, noting that "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established."[53]

¶73  In sum, the key facts in Cross leading to denial of plea withdrawal were that the penalty communicated to the defendant was not substantially higher than the potential punishment and the court viewed the defendant as having understood the potential punishment as required by Wis. Stat. § 971.08 and Bangert.

---

[51] Cross, 326 Wis. 2d 492, ¶34.

[52] Cross, 326 Wis. 2d 492, ¶38.

[53] Cross, 326 Wis. 2d 492, ¶39 (emphasis added).

31

¶74 In the instant case, the facts are substantially different from those in Cross. Finley was mistakenly informed by the circuit court that he faced a different potential punishment than the maximum statutory penalty, and Finley did not know the maximum statutory penalty. Moreover, unlike in Cross, Wis. Stat. § 973.13, which commutes a sentence imposed that exceeds the maximum statutory penalty, does not provide a remedy in the instant case, in which the sentence initially imposed (although at the plea colloquy the circuit court advised otherwise) did not exceed the maximum statutory penalty.[54]

¶75 We turn now to the Taylor case. The facts in Taylor appear (at first blush) to be an example of what the Cross court foresaw as a "greater risk" to due process rights, that is, telling a defendant the maximum potential punishment is lower than it actually is.[55]

¶76 In Taylor, the defendant was a repeat offender facing an eight-year sentence——six years' imprisonment[*] for uttering a forgery plus a two-year enhancement for prior offenses.[56] Taylor pleaded no contest to the offense at a plea hearing at which the circuit court stated that it "could impose the maximum penalty here of a $10,000 fine or six years in prison or both."[57]

---

[54] See supra ¶¶9, 12 n.11, 33.

[55] Cross, 326 Wis. 2d 492, ¶39 (emphasis added).

[56] Taylor, 347 Wis. 2d 30, ¶1.

[57] Taylor, 347 Wis. 2d 30, ¶16.

Although the circuit court's colloquy mentioned the repeater allegation several times, the circuit court did not explicitly inform Taylor that he faced an additional two-year enhancement as a repeater.[58]

¶77 After the circuit court sentenced Taylor to six years' imprisonment,[*] Taylor moved to withdraw his no contest plea, arguing, among other things, that his plea was not entered knowingly, intelligently, and voluntarily.[59] The circuit court denied Taylor's motion, and this court affirmed the circuit court.

¶78 The Taylor court concluded that the circuit court record was "replete with evidence" that Taylor was informed and aware of the potential punishment of 8 years' imprisonment[*] he faced if convicted.[60] Among other things, the plea questionnaire/waiver of rights form, information, and criminal complaint all informed Taylor of the maximum potential punishment of 8 years' imprisonment.[*61]

¶79 We held that Taylor's "plea was entered knowingly, intelligently, and voluntarily [because] the record makes clear that the defendant knew the maximum penalty that could be

---

[58] Taylor, 347 Wis. 2d 30, ¶2.

[59] Taylor, 347 Wis. 2d 30, ¶3.

[60] Taylor, 347 Wis. 2d 30, ¶35. The State may use any evidence in the record to prove a defendant's understanding at the time of entry of the plea. Taylor, 347 Wis. 2d 30, ¶32.

[61] Taylor, 347 Wis. 2d 30, ¶¶35-38.

imposed and was verbally informed at the plea hearing of the penalty that he received.  Therefore, the circuit court did not err by denying Taylor's postconviction motion to withdraw his no contest plea."[62]

¶80 In sum, in Taylor, the potential punishment communicated to the defendant was lower than the maximum statutory penalty.  The record demonstrated, however, that Taylor knew the potential punishment when he entered his plea, even though the circuit court's plea colloquy did not correctly advise him of the potential punishment.  Under these facts, the Taylor court agreed with the circuit court's decision that the plea was knowingly, intelligently, and voluntarily entered:  The defendant knew the potential punishment and was given the sentence the circuit court advised.  Taylor was not entitled to withdraw his plea.[63]

¶81 Cross and Taylor demonstrate that a circuit court's failure to correctly advise a defendant in the plea colloquy of the potential punishment he faces does not automatically permit a defendant to withdraw his or her plea.  In these cases, the defendants knew the potential punishment and were given the sentence the circuit court described.

¶82 Although Cross and Taylor have some similarities to the instant case, the facts in Cross and Taylor are

---

[62] Taylor, 347 Wis. 2d 30, ¶8.

[63] Taylor, 347 Wis. 2d 30, ¶42.

significantly different from the facts in the instant case and therefore do not govern our decision.

¶83 In Cross, this court held that the insubstantial misstatement of the potential punishment did not constitute a Bangert violation.[64] In Taylor, the court held that the circuit court record made clear that the defendant knew the potential punishment.[65]

¶84 As a result, in both Cross and Taylor, no evidentiary hearing was needed.[66]

¶85 In the instant case, there was a Bangert violation and an evidentiary hearing was held.[67] The record in the instant case does not establish that Finley knew the information about potential punishment about which he was misinformed during the plea colloquy. On the contrary, after the evidentiary hearing, the State "abandoned any argument that it met its burden, at least with respect to Finley's knowledge, at the time he pled, of the correct maximum penalty he faced."[68] In this court, the

---

[64] Cross, 326 Wis. 2d 492, ¶4.

[65] Taylor, 347 Wis. 2d 30, ¶34.

[66] See Cross, 326 Wis. 2d 492, ¶¶4, 38, 41; Taylor, 347 Wis. 2d 30, ¶¶4, 8, 18.

[67] The State did not seek review of the court of appeals' decision that there was a Bangert violation in Finley's case. The State further acknowledges that the plea colloquy misinformed Finley of the potential punishment he faced if convicted, and the State acknowledges that Finley did not otherwise know, when he entered his plea, of the potential punishment he faced if convicted.

[68] Finley, 365 Wis. 2d 275, ¶21.

35

State acknowledges that Finley did not know the potential punishment he faced when he entered his plea.

¶86 The State argues that the remedy in Finley's case is sentence reduction (commutation). The State asserts that as long as Finley ultimately receives a sentence that he was informed he could get and that sentence is less than or equal to the maximum statutory penalty, Finley's plea was knowing, intelligent, and voluntary for constitutional purposes. No Wisconsin or United States Supreme Court case supports the State's proposition.[69]

¶87 The State relies on Taylor in proposing its resolution of the instant case despite the differences between the instant case and Taylor that we outlined above. In Taylor, unlike in the instant case, the circuit court record revealed that the defendant knew the potential punishment he faced if convicted.

¶88 We conclude that the facts and circumstances of Finley's case are more like those in Bangert and Brown than those in Cross or Taylor.

¶89 As in Bangert and Brown, Finley's plea colloquy was deficient and his postconviction motion demonstrated a prima facie Bangert violation.

---

[69] In a per curiam opinion predating Bangert and Brown, this court did allow reduction (commutation) of a sentence to the sentence a defendant was told he could receive. The court also noted, however, that the defendant's plea was entered knowingly and voluntarily. See Preston v. State, 58 Wis. 2d 728, 729, 206 N.W.2d 619 (1973) (per curiam).

36

¶90 In Bangert, the circuit court's plea colloquy failed to adequately establish that the defendant understood the nature of the charges to which he pleaded.[70] An evidentiary hearing was held at which the State met its burden of proving that the defendant knowingly, intelligently, and voluntarily entered his plea.[71] Thus, the defendant in Bangert was not entitled to withdraw his plea.[72] Had the State not met its burden, however, it appears that the defendant would have been entitled to withdraw his plea.[73]

¶91 In Brown, the circuit court's plea colloquy failed to adequately establish that the defendant understood the nature of the charges to which he pleaded as well as the constitutional rights he waived.[74] The Brown court concluded that Brown adequately alleged that he did not understand the nature of the charges to which he pleaded or the constitutional rights he waived.[75] As a result, the Brown court remanded the cause for an evidentiary hearing, at which the State had the burden of proving that Brown understood the charges to which he pleaded and the constitutional rights he waived despite the deficiencies

---

[70] Bangert, 131 Wis. 2d at 251.

[71] Bangert, 131 Wis. 2d at 284-86.

[72] See Bangert, 131 Wis. 2d at 285-86.

[73] See Bangert, 131 Wis. 2d at 283.

[74] Brown, 293 Wis. 2d 594, ¶5.

[75] Brown, 293 Wis. 2d 594, ¶79.

at the plea hearing.[76]  If the State did not meet its burden at the evidentiary hearing, it appears the defendant would have been entitled to withdraw the plea.[77]

¶92  Bangert and Brown stand for the proposition that when a plea colloquy is deficient and the defendant alleges that he did not know or understand the information that should have been provided in the plea colloquy, the defendant is entitled to an evidentiary hearing at which the State has an opportunity to prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily entered his plea.[78]  If

---

[76] Brown, 293 Wis. 2d 594, ¶79.  The Brown court rejected, however, the defendant's argument that the circuit court violated Wis. Stat. § 971.08 and Bangert by failing to state in the plea colloquy that the punishment for each charge could run consecutively, stating:

> Although the better practice is to advise the defendant of the cumulative maximum sentence he could receive from consecutive sentences, we do not believe the omission of such information should allow a defendant to withdraw a guilty plea in the absence of any allegation that the defendant did not understand the effect of multiple charges on his sentence.

Brown, 293 Wis. 2d 594, ¶78.

[77] Brown, 293 Wis. 2d 594, ¶36 ("Assuming the defendant's postconviction motion is adequate to require a hearing, he may withdraw his plea after sentencing as a matter of right unless the state can show the plea was entered knowingly, intelligently, and voluntarily, despite the deficiencies in the plea hearing.") (citing State v. Trochinski, 2002 WI 56, ¶17, 253 Wis. 2d 38, 644 N.W.2d 891; Van Camp, 213 Wis. 2d at 139).

[78] See Brown, 293 Wis. 2d 594, ¶¶58-59; Bangert, 131 Wis. 2d at 274.

38

the State fails to meet its burden at the evidentiary hearing, the defendant is entitled to withdraw his plea.[79]

¶93 In the instant case, Finley had an evidentiary hearing. The State does not contest that Finley did not know, when he entered his plea, of the potential punishment if convicted.

¶94 In sum, in the posture of the instant case, Finley did not know when he entered his plea of the potential punishment he faced if convicted. As in Bangert and Brown, the State had the opportunity in the instant case to prove the defendant's knowledge of the information set forth in Wis. Stat. § 971.08(1)(a) and the case law. A defendant's lack of understanding of the potential punishment when he or she enters a guilty or no contest plea is relevant for determining whether the plea was entered knowingly, intelligently, and voluntarily. The rule in Bangert and Brown is that if the State cannot meet its burden of proof, the defendant is entitled to withdraw his plea.

¶95 Under the circumstances of the instant case, Bangert, Brown, Cross, and Taylor lead us to conclude that Finley is entitled to withdraw his plea: The circuit court misinformed Finley of the potential punishment he faced if convicted, information the circuit court was required to give the defendant; and the State failed to prove that when Finley

---

[79] See Brown, 293 Wis. 2d 594, ¶36; Bangert, 131 Wis. 2d at 283; Cross, 326 Wis. 2d 492, ¶20.

entered his plea he knew the potential punishment he faced if convicted. The case law tells us that under these circumstances Finley was entitled to withdraw his plea. Bangert, 131 Wis. 2d at 283 ("When a defendant established a denial of a relevant constitutional right, withdrawal of the plea is a matter of right."); Brown, 293 Wis. 2d 594, ¶19 ("When a guilty plea is not knowing, intelligent, and voluntary, a defendant is entitled to withdraw the plea as a matter of right because such a plea 'violates fundamental due process.'") (quoting Van Camp, 213 Wis. 2d at 139); see also Cross, 326 Wis. 2d 492, ¶20 ("If the State cannot meet its burden [of proving by clear and convincing evidence that the plea was knowing, voluntary, and intelligent despite the deficiencies of the plea hearing,] the defendant is entitled to withdraw his plea as a matter of right.") (citing Van Camp, 213 Wis. 2d at 139).

¶96 Accordingly, we affirm the decision of the court of appeals and remand the cause to the circuit court with instructions to grant Finley's motion to withdraw his plea.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

40

**ATTACHMENT A: GLOSSARY**

1. **Indeterminate sentencing** and **Truth in Sentencing**: Although Wisconsin's sentencing system shifted from indeterminate sentencing to truth in sentencing in 1998, see 1997 Wis. Act 283, the requirements of Wis. Stat. § 971.08(1)(a) and the case law regarding the circuit court's duties in a plea colloquy have remained substantially the same over the years. Compare, e.g., Bangert, 131 Wis. 2d at 260-62 (discussing the requirements of Wis. Stat. § 971.08 and the general duties of the trial court prior to accepting a guilty or no contest plea under Wisconsin's indeterminate sentencing system), with Brown, 293 Wis. 2d 594, ¶¶22-35 ("[R]estat[ing] and supplement[ing] the Bangert outline" under the truth in sentencing system).

2. **Truth in Sentencing Terminology**:

   A. **Bifurcated Sentence.** A bifurcated sentence is a sentence that consists of a **term of confinement in prison** followed by a **term of extended supervision.** The total length of a bifurcated sentence may not exceed the maximum period of imprisonment set forth in § 939.50(3) (and other statutes). See Wis. Stat. § 973.01(1), (2).

   **"Imprisonment;" "Confinement in Prison;" "Extended Supervision."** "Imprisonment" refers to both parts of a bifurcated sentence: the period of initial confinement in prison plus the period of extended supervision. "Imprisonment" and "confinement in prison" are thus not synonymous. See Wis. Stat. § 973.01(1); State v. Jackson, 2004 WI 29, ¶5 n.4, 270 Wis. 2d 113, 676 N.W.2d 872 ("Under Truth-in-Sentencing legislation, the term 'imprisonment' does not mean time in prison. Rather, 'imprisonment' consists of both the time of confinement (in prison) and the time following the confinement spent on extended supervision."); State v. Cole, 2003 WI 59, ¶16, 262 Wis. 2d 167, 663 N.W.2d 700 ("Section 973.01 used the word 'imprisonment' to refer to a 'bifurcated sentence' consisting of 'a

41

term of confinement in prison followed by a term of extended supervision . . . .'") (quoting Wis. Stat. § 973.01(1)).

Extended supervision may be imposed in addition to confinement in prison and is part of the total period of imprisonment. Wisconsin Stat. § 973.01(2)(d) sets the minimum and maximum term of extended supervision as follows:

> The term of extended supervision may not be less than 25% of the length of the term of confinement in prison imposed under par. (b) and, for a classified felony, is subject to whichever of the following limits is applicable:
>
> 1. For a Class B felony, the term of extended supervision may not exceed 20 years.
>
> 2. For a Class C felony, the term of extended supervision may not exceed 15 years.
>
> 3. For a Class D felony, the term of extended supervision may not exceed 10 years.
>
> 4. For a Class E, F, or G felony, the term of extended supervision may not exceed 5 years.
>
> 5. For a Class H felony, the term of extended supervision may not exceed 3 years.
>
> 6. For a Class I felony, the term of extended supervision may not exceed 2 years.

3. **Potential Punishment:** The statutory phrase "potential punishment" has not been defined in the statutes or the case law. In analyzing whether a defendant was correctly advised of the potential punishment, our cases have looked to the maximum statutory penalty, that is, the maximum sentence provided for by statute.

Wisconsin Stat. § 939.50(3) sets forth the maximum statutory penalty for felonies. Other statutes add enhancements to the penalties specified in Wis. Stat. § 939.50(3). For example, there are enhancements for repeater offenses, domestic abuse offenses, or for offenses committed with the use of

42

a dangerous weapon.  <u>See, e.g.,</u>  Wis. Stat. §§ 939.62, 939.621, 939.63.

4. **<u>Range of Punishments</u>:** Some cases use the phrase "range of punishments" in addition to or in place of "potential punishment."  "Range of punishments," "potential punishment," "maximum statutory penalty," and various other phrases are used synonymously in the cases to mean "potential punishment."

<u>See, e.g.,</u> <u>State v. Bangert</u>, 131 Wis. 2d at 260-61 (quoting Wis. Stat. § 971.08(1)(a)'s reference to "potential punishment," and referring to the "range of punishments"); <u>State v. Brown</u>, 293 Wis. 2d 594, ¶¶3, 35, 44 (quoting Wis. Stat. § 971.08(1)(a)'s reference to "potential punishment" and referring to the "range of punishments"); <u>State v. Taylor</u>, 2013 WI 34, ¶¶31, 33, 37, 41, 42 n.12, 347 Wis. 2d 30,    829    N.W.2d 482    (referring interchangeably to the "potential punishment," "maximum term of imprisonment," "maximum penalty," "range of punishments," and "sentence"); <u>State v. Cross</u>, 2010 WI 70, ¶¶3, 11, 28, 35, 37-38, 326 Wis. 2d 492,    786    N.W.2d 64    (referring interchangeably to "range of punishments," "maximum potential    sentence,"    "maximum    potential imprisonment," "maximum initial sentence," "actual allowable    sentence,"    and    "precise    maximum sentence").

Circuit courts do not usually advise a defendant of the minimum statutory penalty, for example, probation if applicable, through the various possible sentences up to the maximum statutory penalty (including any enhancements) set forth in the felony statutes.  Circuit courts do, however, generally advise a defendant of a presumptive or mandatory minimum sentence.  <u>See State v. Chamblis</u>, 2015 WI 53, ¶24, 362 Wis. 2d 270, 864 N.W.2d 806 (citing <u>State v. Mohr</u>, 201 Wis. 2d 693, 700, 549 N.W.2d 497 (Ct. App. 1996); <u>see also State v. Thompson</u>, 2012 WI 90, ¶51, 342 Wis. 2d 674, 818 N.W.2d 904.  A circuit court need not advise a defendant of the division between confinement in prison and extended supervision.  <u>See Taylor</u>, 347 Wis. 2d 30, ¶42 n.12 ("We have never held, and we do not hold today, that the court must parse out and specifically advise the defendant of the potential

43

term of confinement and also the potential term of
extended supervision at the plea colloquy.").

¶97 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* I do not join the majority opinion because I would not allow defendant Timothy Finley ("Finley") to withdraw his plea of no contest, for three reasons. First, the two misstatements in this case as to the maximum penalty applicable to Finley's plea, taken together, do not constitute a <u>Bangert</u> violation. Second, even if a <u>Bangert</u> violation could be said to have occurred in this case, the circuit court's finding subsequent to the <u>Bangert</u> hearing that Finley knew the maximum applicable penalty is not clearly erroneous. Third, even if a <u>Bangert</u> violation could be said to have occurred in this case, and even if the circuit court's finding subsequent to the <u>Bangert</u> hearing that Finley knew the maximum applicable penalty is clearly erroneous, plea withdrawal should not be the only available remedy; Finley's sentence can be reduced to a 19.5-year term of imprisonment. As will be shown, the entirety of the record in this case demonstrates that Finley's motion is really based upon the fact that he did not receive the sentence he hoped he would receive pursuant to his plea negotiations.[1]

I

¶98 Although the majority focuses on the two errors that occurred during the proceedings below, an understanding of the

---

[1] Additionally, the court's opinion should not be read as deciding any more than is necessary to resolve this case properly, and its purported need to define numerous terms raises unnecessary questions.

entire record is crucial to the correct disposition of this case. Thus, I provide certain additional facts.

¶99 On June 5, 2011, and according to the criminal complaint filed against him, Finley brutally beat K.A.G., an adult female with whom he lived, for a period of about five hours. The complaint alleges that Finley held a 10- to 12-inch butcher knife to K.A.G.'s throat, continuously struck her with a closed fist, and choked her until she lost consciousness. K.A.G. alleges that she sustained bruises, a broken nose, cuts to her hands from when she tried to pull the butcher knife away from her throat, cuts "all over [her] entire neck" and on her stomach, and a "deep" cut on her wrist that "was bleeding pretty bad" and that allowed her to "see some of the tendons in [her] arm." According to K.A.G., her medical treatment required, among other things, staples to her head.

¶100 On June 7, 2011, a criminal complaint was filed against Finley charging him with four offenses: (1) first-degree reckless endangerment, domestic abuse, use of a dangerous weapon, contrary to Wis. Stat. §§ 941.30(1), 968.075(1)(a), and 939.63(1)(b); (2) substantial battery, domestic abuse, contrary to Wis. Stat. §§ 940.19(2) and 968.075(1)(a); (3) strangulation and suffocation, domestic abuse, contrary to Wis. Stat. §§ 940.235(1) and 968.075(1)(a); and (4) false imprisonment, domestic abuse, contrary to Wis. Stat. §§ 940.30 and 968.075(1)(a). The complaint stated in part that, upon conviction, Finley could be imprisoned: (1) up to 12.5 years for the reckless endangerment charge, which could be increased by up

2

to 5 years because Finley committed the offense while using a dangerous weapon; (2) up to 3.5 years for the substantial battery charge; (3) up to 6 years for the strangulation and suffocation charge; and (4) up to 6 years for the false imprisonment charge.[2]

¶101 On June 27, 2011, an information was filed at the close of Finley's preliminary hearing. The State provided Finley's first attorney[3] with two copies. The attorney orally acknowledged receipt of the information.

¶102 The information repeated the charges listed in the complaint against Finley, but additionally charged Finley as a repeater under Wis. Stat. § 939.62(1)(c) as to the first-degree reckless endangerment count and under § 939.62(1)(b) as to the other three counts. The information stated in part that, upon conviction, Finley could be imprisoned: (1) up to 12.5 years for the reckless endangerment charge, which could be increased by up to 5 years because Finley committed the offense while using a dangerous weapon, and up to an additional 6 years because Finley was a repeater; (2) up to 3.5 years for the substantial battery

---

[2] I do not mention any applicable fines in this separate writing.

[3] In order to differentiate this attorney from the attorney who represented Finley during plea negotiations, the plea hearing, and the sentencing hearing, this attorney will be referred to as Finley's "first attorney." The attorney who represented Finley during plea negotiations, the plea hearing, and the sentencing hearing will be referred to simply as Finley's attorney. The record suggests that Finley was briefly represented by a third attorney during the earliest of the proceedings below, but that attorney will not be referenced.

3

charge, which could be increased by up to 4 years because Finley was a repeater; (3) up to 6 years for the strangulation and suffocation charge, which could be increased by up to 4 years because Finley was a repeater; and (4) up to 6 years for the false imprisonment charge, which could be increased by up to 4 years because Finley was a repeater.

¶103 On August 1, 2011, Finley's arraignment was held. The following conversation took place:

> THE COURT: Defendant appears in person with [his attorney]. So, we are here for arraignment on the felony?
>
> [FINLEY'S FIRST ATTORNEY]: Yes, Your Honor.
>
> THE COURT: Has your client received a copy of the information?
>
> [FINLEY'S FIRST ATTORNEY]: We have received a copy of the information, four-count information. <u>I have provided a copy to Mr. Finley. We discussed the nature of the charges and the maximum penalties. We waive a formal reading of the information</u> . . . .

(Emphasis added.)

¶104 Plea negotiations ensued. On June 24, 2012, the day before Finley's plea hearing, and according to postconviction testimony from Finley's attorney,[4] Finley's attorney met with Finley for one to two hours and discussed a plea offer made by the State. Finley chose not to accept the offer. He had been hoping to be found eligible by the court for the Earned Release and Challenge Incarceration programs, and accepting the State's offer would have made him ineligible for those programs. <u>See</u>

---

[4] <u>See</u> <u>supra</u>, n.3.

4

generally Wis. Stat. §§ 973.01(3g)-(3m), 302.05(3), 302.045. Specifically, three out of the four crimes with which Finley was charged——substantial battery, strangulation and suffocation, and false imprisonment——are all crimes under chapter 940 of the Wisconsin Statutes, "Crimes Against Life and Bodily Security." See Wis. Stat. §§ 940.19(2), 940.235(1), 940.30. Those convicted of chapter 940 crimes are statutorily ineligible for the Earned Release and Challenge Incarceration programs. See § 973.01(3g)-(3m). Although the specifics of the State's offer are not in the record, Finley's attorney testified that the State asked for Finley to plead to charges that would have rendered him statutorily ineligible for these programs.

¶105 Finley and his attorney thus discussed a counter-offer, according to which Finley would plead to first-degree reckless endangerment. First-degree reckless endangerment is a crime under chapter 941 of the Wisconsin Statutes, "Crimes Against Public Health and Safety." See Wis. Stat. § 941.30(1). Although first-degree reckless endangerment is classified as a more serious crime than the other crimes with which Finley was charged, see Wis. Stat. §§ 940.19(2), 940.235(1), 940.30, 941.30(1), Finley and his attorney believed that pleading to a chapter 941 crime in exchange for dismissal of the other crimes left Finley statutorily eligible for the Earned Release and Challenge Incarceration programs. Finley's attorney testified as follows:

> Q: So, on that date, which was the eve before the plea hearing?
>
> A: That is my recollection, yes.

5

Q: [Finley] indicated that he would be willing to plead to that first-degree recklessly endangering safety charge?

A: Yes.

Q: And that had enhancers, did it not?

A: Yes, it did.

Q: And was it also the proposal it would include the repeater and the dangerous weapon enhancers?

A: That was based on what [the State] was asking for, and I don't remember the specifics of that most recent offer. But I do remember that what he would have been pleading to, what I was going to take to [the State], had higher penalties than what [the State] was asking for, but it was only the one charge and it had the eligibility determination.

Q: . . . Ultimately [the State] accepted your proposal; is that correct?

A: Yes.

Q: And it, in fact, was to that one charge with both those enhancers, correct?

A: Yes.

Q: So, with your usual practice would you then explain the pitfalls of going back and specifically detail what the maximum exposure would have been?

A: Yes.

Q: Did you -- would you have done that then prior, the day before prior to the plea hearing?

A: We did. I remember we did discuss the fact that it would have been a higher penalty. So, I expect we did discuss that. Because I remember that was one of the specifics, that is what we were proposing had a higher maximum penalty.

Q: And in your usual practice would you ever have someone agree to plead to something where they were not aware of what the maximum exposure was?

6

A: No.

Q: So, that would have been something you would have covered with [Finley] so he knew, okay, you may become eligible, but now you are looking at this specific exposure; is that correct?

A: Yes.

Q: And on that date is there any reason to believe that you didn't give him the correct maximum exposure?

A: No.

Q: You did not do the plea form on that date; is that correct?

A: No. . . .

Q: So, to the best of your knowledge, the day before [the plea hearing] when [Finley] was willing to plead to this charge with these enhancers, he was fully aware of the maximum potential penalties?

A: Yes.

. . .

Q: . . . [T]he evening before [the plea hearing] [Finley] had already been told the correct amount, that would have been your practice?

A: That would have been my practice.

(Emphases added.)

¶106 Consequently, as of June 24, 2012——the day before Finley's plea hearing——there is no evidence in the record to suggest that Finley had been misinformed or was otherwise unaware of the maximum applicable penalty for first-degree reckless endangerment, domestic abuse, use of a dangerous weapon, as a repeater. To the contrary: (1) Finley had received a copy of the information, which correctly stated the maximum applicable penalties; (2) Finley had reviewed the nature of the

7

charges against him and maximum applicable penalties with his first attorney; (3) Finley had waived a formal reading of the information at his arraignment; and (4) Finley's attorney testified that, to the best of his knowledge, Finley was aware of the maximum applicable penalty relevant to his plea the day before his plea hearing.

¶107 On June 25, 2012, Finley's plea hearing was held. Two actions relevant to this case occurred prior to the hearing. First, Finley's attorney presented the State with Finley's counter-offer. Second, Finley's attorney and Finley filled out and reviewed Finley's Plea Questionnaire and Waiver of Rights form.

¶108 For the first time, and at most hours before his plea hearing, Finley was presented with an erroneous statement of the maximum applicable penalty. The plea form stated in part, "The plea agreement . . . is as follows: Plea to count one as charged. State will dismiss and read in the remaining charges in 2011-CF-671 as well as the charges in 2011-CM-953. The State will cap its recommendation at 10 years initial confinement. We are free to argue." Unfortunately, the form also stated: "The maximum penalty I face upon conviction is <u>19 years, 6 months confinement</u> . . . ." (Emphasis added.) This is incorrect. Upon conviction, Finley faced a total bifurcated sentence of imprisonment of 23.5 years: 18.5 years of initial confinement and 5 years of extended supervision (12.5 years for the first-degree reckless endangerment charge, 5 years for the dangerous weapon enhancer, and 6 years for the repeater enhancer). <u>See</u>

8

Wis. Stat. §§ 941.30(1) ("Recklessly endangering safety"), 939.50(3) ("Classification of felonies"), 939.63(1)(b) ("Penalties; use of a dangerous weapon"), 939.62(1)(c) ("Increased penalty for habitual criminality"), 973.01 ("Bifurcated sentence of imprisonment and extended supervision").[5] Finley's attorney testified that it would have been his practice to have proceeded line by line through the plea questionnaire with Finley and to have read the 19.5-year figure to him.

¶109 Importantly, however, Finley's attorney also testified as follows:

> Q: So, the erroneous amount of nineteen and a half, that was first introduced after the defendant had already proposed [his] offer to the State on the day of the plea hearing?
>
> A: Yes.

(Emphasis added.)

¶110 At the plea hearing, the error on the plea questionnaire was repeated, but not until after the circuit

---

[5] Finley's attorney could not determine, in retrospect, the origin of the erroneous 19.5-year figure. One possibility comes to mind, however. As stated, Finley faced a term of imprisonment of up to 12.5 years for the reckless endangerment charge and up to 5 years for the use of a dangerous weapon enhancer; these numbers add to 17.5 years. The habitual criminality statute provides enhancements of 2, 4, or 6 years depending on the applicable maximum term of imprisonment and on whether the prior convictions were for misdemeanors or felonies. See Wis. Stat. § 939.62(1). If Finley's attorney incorrectly applied the repeater enhancer from Wis. Stat. § 939.62(1)(a) rather than from § 939.62(1)(c), he would have added 2 years to Finley's term of imprisonment rather than 6. This would result in an erroneous maximum term of imprisonment of 19.5 years.

9

court correctly discussed the maximum applicable penalty. The following exchange occurred:

> THE COURT: The maximum penalty for the offense would be a fine of not more than $25,000 or imprisonment not more than twelve years and six months or both.
>
> MR. FINLEY: Yes, sir.
>
> THE COURT: Okay. I take it -- are we pleading as a repeater?
>
> [THE STATE]: Yes, Your Honor.
>
> THE COURT: Okay. That will be the base penalty. Then because you are a repeater, then they could increase the incarceration period by not more than an additional six years. And they are basing the repeater enhancement provision on the fact that you were convicted of possession of cocaine as a subsequent offender, and possession of THC as a subsequent offender on September 12th, 2008, in Brown County. Do you remember those two felonies?
>
> MR. FINLEY: Yes, sir.
>
> THE COURT: Okay. And they are also charging that you used a dangerous weapon. And for the enhancement provision of using a dangerous weapon then the term of imprisonment can be increased by not more than five years for that. Do you understand that then?
>
> MR FINLEY: Yeah.
>
> THE COURT: All right. So the maximum you would look at then <u>nineteen years six months confinement.</u> Do you understand the maximum penalties?
>
> MR. FINLEY: Yes, sir.
>
> THE COURT: Now, did -- were you able to read the criminal complaint in the past or have the criminal complaint read to you in the past?
>
> MR. FINLEY: Yeah.

(Emphasis added.)

10

¶111 Despite the fact that, on the date of his plea hearing, Finley was given information that conflicted with what he had been told prior to that date, the record does not contain evidence that Finley then informed either the court or his attorney that he was confused by the inconsistency.[6] In fact, the circuit court asked Finley, shortly after the exchange just provided:

> THE COURT: Is there anything on the plea questionnaire form that you didn't understand that you'd like to ask your attorney questions or you would like to ask me questions about it?

> MR. FINLEY: No, sir.

¶112 The circuit court accepted Finley's plea of no contest to first-degree reckless endangerment, domestic abuse, use of a dangerous weapon, as a repeater.

¶113 On August 22, 2012, an agent at the Department of Corrections prepared a presentence investigation report ("PSI") for Finley's sentencing. The "Recommendation" portion of the PSI, which appears on page 18 of that document, states in part:

> Mr. Finley is facing sentencing for 1st Degree Reckless Endangerment, Domestic Abuse, Use of a Dangerous Weapon, Repeater, with this offense being defined as a Class F felony with a maximum imprisonment term of 12.5 years and a maximum confinement term of 7.5 years coupled with a maximum extended supervision term of 5 years. Further invoking the provisions of 939.63(1)(b) because the defendant committed this offense while using a

---

[6] Finley's attorney testified that Finley said "something" to him when the court advised him of the maximum applicable penalty, but Finley's attorney could not recall what Finley had said.

dangerous weapon the maximum term of imprisonment may be increased by not more than 5 years. Further invoking the provisions of 939.62(1)([c]) because the defendant is a repeater the maximum term of imprisonment may be increased by not more than 6 years. Based upon the risk to re-offend as well as the treatment needs it is therefore respectfully recommended that Mr. Finley be sentenced to 10 to 12 years confinement followed by 5 years extended supervision.

¶114 In a letter dated September 19, 2012, Finley's attorney informed the circuit court:

> <u>My client and I have had the opportunity to review the Pre-Sentence Investigation prepared by the Department of Corrections in this case</u>. At this time we are requesting that the Sentencing Hearing . . . be adjourned. . . . It appears as if some of the information presented in the PSI may be incorrect . . . .

(Emphasis added.)

¶115 On September 21, 2012, the sentencing hearing was adjourned to October 19, 2012. On October 19, 2012, at sentencing, proceedings began with a discussion of some of the alleged errors in the PSI. Finley's attorney explained in part:

> [FINLEY'S ATTORNEY]: I'll just note on page 12 there is a statement by Mr. Finley's father. The first paragraph on page 12 where his father is claiming that he broke [N.H.'s] jaw. There is nothing here to support that. My client denies that.
>
> . . .
>
> [FINLEY'S ATTORNEY]: The other thing I wanted to address is more of a legal issue would be <u>on page 18</u> regarding the Challenge Incarceration and Earned Release. Agent says that [Finley is] not eligible because this is a Chapter 940 offense. My independent presentence writer made the same mistake. This is a Chapter 941 offense, so he is statutorily eligible for those programs.

12

(Emphasis added.) In other words, the record suggests that Finley and his attorney closely reviewed the PSI. In fact, they challenged information on the same page upon which appeared a detailed explanation of Finley's maximum exposure. They did not challenge the explanation of Finley's maximum exposure.

¶116 Eventually the circuit court sentenced Finley. The court was clearly disgusted by the "horrific" nature of the offense charged, observing that the injuries sustained by K.A.G. "show[ed] a total, utter disregard for human life." The court noted before pronouncing sentence:

> I know that the Court of Appeals . . . looks disfavorably upon maximum sentences, and they really strictly review those sentences when judges impose them. But I've been here on the bench twenty-one years, and I've done criminal cases for most of those twenty-one years. . . . And I don't know what cases require the maximum if this one doesn't.
>
> If you take time to go look at these photographs and understand clearly what this victim endured, I don't know if it takes thirty, forty, forty-nine, slits of the knife for someone to realize that this case is worth the maximum?

¶117 The court also reviewed Finley's decades-long criminal history, noting the "variety of significant and serious criminal convictions, many that show again [Finley's] disregard for other human beings."

¶118 When the court eventually sentenced Finley, it stated:

> I am going to impose the maximum sentence in this case. I calculate that to be twenty-three point five years consisting of eighteen point five years of initial confinement and five years of extended supervision.

Moreover, the court informed Finley, "I can't think of any reason . . . that you should be entitled to Challenge Incarceration or [Earned] Release, therefore I'm going to deny both."

¶119 At no time during the sentencing hearing did Finley's attorney or Finley express any confusion as to the maximum applicable penalty as meted out by the court. Indeed, at the end of the hearing, the court verified:

> THE COURT: . . . Anything the State didn't consider -- or the Court didn't consider the State would like addressed . . . ?
>
> [THE STATE]: No, Your Honor.
>
> THE COURT: [Finley's attorney]?
>
> [FINLEY'S ATTORNEY]: No, Your Honor.

¶120 As the opinion of the court explains, on June 5, 2013, Finley filed a postconviction Bangert motion alleging that Finley's plea questionnaire misstated the applicable maximum penalty, that the circuit court repeated this error, and that Finley "did not know at the time of the plea hearing that the court could impose a total of 23.5 years, consisting of 18.5 years of initial confinement and five years of extended supervision." See State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Finley requested "that the court enter an order permitting Finley to withdraw his no contest plea; or alternatively, that the court modify the judgment of conviction to a maximum bifurcated sentence of 19.5 years, in keeping with the information Finley received at the plea hearing."

14

¶121 On July 19, 2013, a nonevidentiary hearing on Finley's motion was held. The State acknowledged the errors that had occurred but argued that Finley was nevertheless aware of the maximum applicable penalty and had not made a prima facie showing under Bangert. The State pointed in part to the criminal information that Finley had received, to representations on the record by Finley's attorneys[7] that they had reviewed with Finley the charges against Finley and the maximum penalty associated with those charges, and to the circuit court's piecemeal recitation to Finley of the maximum penalty for first-degree reckless endangerment and the additional penalties Finley faced when the dangerous weapon and repeater enhancers were added. The State argued that Finley was simply taking advantage of his attorney's mistake.

¶122 The postconviction court——the same court that had sentenced Finley and that had interacted with Finley in the courtroom——denied Finley's motion. The court concluded that Finley "knew fully well" the maximum applicable penalty at the time he entered his plea and that he had not made a prima facie Bangert showing. Finley appealed.

¶123 On March 18, 2014, the court of appeals determined that Finley had "established a Bangert violation as a matter of law" and remanded for an evidentiary hearing. State v. Finley,

---

[7] The State was likely referring to the statement at Finley's arraignment. It is unclear to which other representations the State was referring, given that Finley's attorney had not yet presented any postconviction testimony.

No. 2013AP1846-CR, unpublished slip op., ¶16 (Wis. Ct. App. Mar. 18, 2014).

¶124 On June 13, 2014, at the resultant hearing, the State called Finley's attorney to testify as to his interactions with Finley. Much of this testimony has already been recounted, including testimony of Finley's discussion with his attorney the night before Finley's plea hearing. The State noted that Finley made no objections at sentencing when the court pronounced sentence. For his part, Finley decided to withdraw his request for modification of his sentence; his attorney stated that Finley only wished to withdraw his plea. On October 8, 2014, in a written order, the court determined that the "State met its burden of establishing that Finley knew the maximum penalty he faced at the time he entered his plea." The court added that it was "satisfied based on the testimony of [Finley's attorney] that Finley actually knew the correct penalty at the time he offered to enter a plea." Nevertheless, the court reduced Finley's term of imprisonment to 19.5 years "in the interest of justice." Finley appealed.

¶125 On appeal, the State did not attempt to argue that it had met its burden at the Bangert evidentiary hearing. Instead, it argued that, because the circuit court had reduced Finley's sentence to what he had been told he could receive, no manifest injustice resulted and Finley was not entitled to withdraw his plea. On September 30, 2015, the court of appeals rejected the State's argument and concluded that, given the fact that the State did not attempt to argue it had met its burden at the

16

_Bangert_ evidentiary hearing, Finley was entitled to withdraw his plea. _State v. Finley_, 2015 WI App 79, ¶¶36-37, 365 Wis. 2d 275, 872 N.W.2d 344. The State petitioned this court to review the decision of the court of appeals, and we granted that petition.

II

¶126 "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" _State v. Taylor_, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482 (citation omitted). Barring a defendant from withdrawing a plea that was not entered knowingly, intelligently and voluntarily would result in a manifest injustice. _Id._ (citation omitted).

¶127 This is so because "[u]nder the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a defendant's guilty plea must be affirmatively shown to be knowing, voluntary, and intelligent." _State v. Cross_, 2010 WI 70, ¶16, 326 Wis. 2d 492, 786 N.W.2d 64 (citing _State v. Brown_, 2006 WI 100, ¶25, 293 Wis. 2d 594, 716 N.W.2d 906). "A plea not entered knowingly, intelligently, and voluntarily violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." _Taylor_, 347 Wis. 2d 30, ¶25.

¶128 "The duties established in Wis. Stat. § 971.08, in _Bangert_, and in subsequent cases are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary." _Brown_, 293 Wis. 2d 594, ¶23. Our case law thus dictates that,

17

after sentencing, if a defendant "(1) make[s] a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege[s] that the defendant did not know or understand the information that should have been provided at the plea hearing," the defendant is entitled to a postconviction evidentiary hearing at which the State must "show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." Id., ¶¶39-40 (citations omitted). If, at the hearing, the State fails to meet its burden, "the defendant is entitled to withdraw his plea as a matter of right." Cross, 326 Wis. 2d 492, ¶20. On the other hand, if the State meets its burden, then "withdrawal of the plea is left to the discretion of the circuit court and will not be disturbed unless the defendant demonstrates a manifest injustice will result from the court's refusal to allow the plea to be withdrawn." Id. (citation omitted).

¶129 Importantly, an "identified inadequacy" in a plea colloquy——a "Bangert violation," Cross, 326 Wis. 2d 492, ¶19——is not itself a constitutional violation requiring plea withdrawal. See, e.g., Bangert, 131 Wis. 2d at 273 ("[A] trial judge's failure to personally ascertain a defendant's understanding of the nature of the charge at the plea hearing constitutes a violation of sec. 971.08, Stats., not a constitutional violation."); id. at 261 ("[S]ection 971.08 is not a constitutional imperative . . . ."); Cross, 326 Wis. 2d 492, ¶19

18

("If the circuit court fails at one of [its] duties . . . the defendant may be entitled to withdraw his plea" (emphasis added) (citation omitted).). Instead, identification of an inadequacy, combined with the defendant's allegation that "the defendant did not know or understand the information that should have been provided at the plea hearing," puts the court on notice that the defendant's plea may not have been entered knowingly, intelligently, and voluntarily——thus the need for an evidentiary hearing to resolve that question. See, e.g., id., ¶¶19-20 (citation omitted).

¶130 We must always keep in mind that, ultimately, our sometimes elaborate postconviction procedures are designed to ensure that defendants are afforded their constitutional rights. In further developing and refining the Bangert framework, this court should not countenance its mechanical application——to the detriment of the public——when it is apparent that the defendant's constitutional rights have not been violated. See id., ¶32 ("[R]equiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights. The Bangert requirements exist as a framework to ensure that a defendant knowingly, voluntarily, and intelligently enters his plea. We do not embrace a formalistic application of the Bangert requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects."). "[I]f a defendant does understand the charge and the effects of his plea, he should not be permitted

19

to game the system by taking advantage of judicial mistakes." Brown, 293 Wis. 2d 594, ¶37 (emphasis added).

¶131 The record in this case, taken as a whole, demonstrates what is really going on in this case: Finley is simply unhappy with the sentence he received. First, he thought he negotiated an outcome that would not approach the maximum potential penalty. Second, he thought he negotiated an outcome that would allow him to be found eligible for the Earned Release and Challenge Incarceration programs. Unfortunately for Finley, the court exercised its discretion to impose the maximum sentence without eligibility for those programs.

¶132 Finley now seeks to escape the consequences of his plea, and seizes upon a pair of errors in the proceedings below to achieve this goal. Had the circuit court and counsel been more careful in determining the actual maximum penalty, this case would not even be pending on appeal. We do not conclude that such errors will always pass constitutional muster, but for the reasons that follow, the court errs in permitting Finley to withdraw his plea.

A.  The Two Misstatements In This Case, Taken Together, Do Not Constitute A Bangert Violation.

¶133 As stated, a post-sentencing Bangert motion requires a defendant to "(1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing." Brown, 293 Wis. 2d 594, ¶39 (citation omitted). Relevant to

20

this case, Wis. Stat. § 971.08 states in part: "(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following: (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge <u>and the potential punishment if convicted</u>." Wis. Stat. § 971.08(1)(a) (emphasis added). Similarly, <u>Bangert</u> requires trial courts, before accepting pleas of guilty or no contest, "[t]o establish the accused's understanding of the nature of the crime with which he is charged <u>and the range of punishments which it carries</u>." <u>Bangert</u>, 131 Wis. 2d at 262 (emphasis added).

¶134 Despite these general rules, we recently clarified in <u>Cross</u> that "not all small deviations from the requirements in our <u>Bangert</u> line of cases equate to a <u>Bangert</u> violation and require a formal evidentiary hearing." <u>Cross</u>, 326 Wis. 2d 492, ¶38. More specifically, we concluded that "a defendant's due process rights are not necessarily violated when he is incorrectly informed of the maximum potential imprisonment." <u>Id.</u>, ¶37.

¶135 In <u>Cross</u> the defendant was told by his attorney, the State, and the circuit court that the maximum penalty applicable to the offense to which the defendant pleaded was higher than it actually was. <u>Id.</u>, ¶1. We concluded that Cross was not entitled to withdraw his plea, even though we determined that Cross "pled guilty under the belief that he faced a higher . . . maximum penalty." <u>Id.</u>, ¶5. We instead held:

> [W]here a defendant is told that he faces a maximum possible sentence that is higher, but not

21

substantially higher, than that authorized by law, the circuit court has not violated the plea colloquy requirements outlined in Wis. Stat. § 971.08 and our Bangert line of cases. In other words, where a defendant pleads guilty with the understanding that he faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments.

Id., ¶4. Put yet another way, we concluded that "a defendant can be said to understand the range of punishments as required by [Wis. Stat.] § 971.08 and Bangert when the maximum sentence communicated to the defendant is higher, but not substantially higher, than the actual allowable sentence." Id., ¶38.

¶136 In Taylor, decided a few years later, we confronted what was in some ways the opposite situation as that which occurred in Cross: the circuit court in Taylor suggested to the defendant that the maximum penalty applicable to the offense to which the defendant pleaded was lower than it actually was, because the court failed to discuss fully a two-year repeater penalty enhancer. Taylor, 347 Wis. 2d 30, ¶¶1-2, 34. Although we acknowledged a statement in Cross that, unlike the situation in Cross, "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established," we nevertheless concluded that the circuit court did not err in denying the defendant's motion to withdraw his plea. Id., ¶¶8-9, 34. Specifically, we characterized the circuit court's omission as an "insubstantial defect," concluding that a "defendant's plea [is] entered knowingly, intelligently, and voluntarily when the record makes clear that the defendant knew

22

the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received." Id., ¶8. We noted that the record in that case was "replete with evidence" that the defendant was aware of the maximum applicable penalty. Id., ¶35.

¶137 Cross and Taylor demonstrate that the nature and effect of an alleged error and what the record demonstrates about a defendant's understanding of any omitted information are factors relevant to a court's consideration of a Bangert motion. This stands to reason, as the Bangert procedures are designed to ensure than an error does not result in an unknowing, unintelligent, or involuntary plea. See, e.g., Taylor, 347 Wis. 2d 30, ¶30. An evidentiary hearing is often needed in order to resolve allegations that a plea was entered unknowingly, unintelligently, or involuntarily, but not always. "Courts must not be rendered powerless to reject a conclusory allegation——'I didn't know'——that is disproven by the existing record." Id., ¶82 (Prosser, J., concurring). Put differently, if it is obvious from a record that a defendant's plea was entered knowingly, intelligently, and voluntarily, an evidentiary hearing should not be required to determine whether a plea was entered knowingly, intelligently, and voluntarily. See id., ¶¶34, 39, 42.

23

¶138 The record in the current case establishes that no Bangert violation occurred below.[8] The two misstatements in this case amount to an "insubstantial defect" given the enormous amount of evidence in the record indicating that Finley was fully aware of the maximum applicable plea.

¶139 First, Finley received a copy of the information, which correctly stated the maximum applicable penalties. Second, Finley reviewed the information, including maximum penalties, with his first attorney, a fact the attorney confirmed in court with no objection from Finley. Third, Finley's attorney waived a formal reading of the information at Finley's arraignment, again with no objection from Finley. Fourth, the circuit court below correctly stated the maximum applicable penalty for the offense to which Finley pleaded no contest, correctly stated the maximum additional exposure because of the dangerous weapon penalty enhancer, and correctly stated the maximum additional exposure because of the repeater penalty enhancer. Fifth, after Finley's plea was entered, Finley and his attorney received a PSI that correctly stated the maximum applicable penalty, and Finley's attorney represented to the circuit court in a letter that he and Finley had had an opportunity to review the PSI. In fact, the transcript of the sentencing hearing suggests that Finley and his attorney

---

[8] For purposes of this section of my analysis, I do not rely on testimonial evidence in the record provided by Finley's attorney at the postconviction hearing, because without a finding of a Bangert violation this hearing would not have occurred.

24

reviewed the PSI quite closely, including the specific page upon which the correct maximum penalty appeared. Yet, although Finley and his attorney challenged specific portions of the PSI, they never raised any concerns about the statement of the maximum applicable penalty as stated on the PSI. Finally, neither Finley nor his attorney objected when the circuit court announced the incorrect maximum applicable penalty at the plea hearing. Nor did they do so when the circuit court pronounced sentence and announced the correct maximum applicable penalty.

¶140 Given this evidence, Finley's claim that he "did not know" the maximum applicable penalty in light of one erroneous statement on the plea questionnaire and one erroneous statement by the circuit court below is simply not believable. In light of the many different times that Finley was correctly informed of the maximum potential penalty——before, during, and after he entered his plea——with no protestation from Finley, the error that occurred in this case

> is, on review of this record, an "insubstantial defect" such that an evidentiary hearing is not required to determine if [Finley] entered his plea knowingly, intelligently, and voluntarily. A Bangert violation occurs, and a hearing is required, when the plea is not entered knowingly, intelligently, and voluntarily. No such hearing is required here because this record reflects that [Finley] indeed pled knowingly, intelligently, and voluntarily.

Taylor, 347 Wis. 2d 30, ¶39. Simply put, "[a] court is not obligated to accept a defendant's statement if the record demonstrates that the statement is not credible." Id., ¶83 (Prosser, J., concurring). Cf. State v. Howell, 2007 WI 75, ¶¶75-77, 301 Wis. 2d 350, 734 N.W.2d 48.

25

¶141 Thus, as the State originally argued before the circuit court below, and as the circuit court correctly determined, no Bangert violation occurred in this case. The record demonstrates that Finley's plea was made knowingly, intelligently, and voluntarily. Because no Bangert violation occurred, the circuit court was not required to grant Finley an evidentiary hearing on his postconviction motion and had discretion to grant or deny Finley's motion for plea withdrawal, assuming that Finley could not otherwise establish a manifest injustice (and Finley has not argued that he can). See Cross, 32 Wis. 2d 492, ¶¶4, 41-44; Taylor, 347 Wis. 2d 30, ¶¶34-35, 39, 50 n.18.

B. The Circuit Court's Finding That Finley Knew The Maximum Penalty Applicable To His Plea Is Not Clearly Erroneous.

¶142 Despite the foregoing, Finley was in fact granted an postconviction evidentiary hearing, at which the State bore the burden of showing "by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." Bangert, 131 Wis. 2d at 274 (citation omitted). At the hearing, the State called Finley's defense counsel as a witness and questioned him about his meeting with Finley the day before the plea hearing. The State also noted the lack of objection from Finley at sentencing when the circuit court sentenced him.

¶143 The circuit court concluded in its written order that the State had met its burden of showing that Finley knew the maximum penalty he faced at the time he entered his plea. The

26

court was "satisfied based on the testimony of [Finley's attorney] that Finley actually knew the correct penalty at the time he offered to enter a plea." It denied Finley's motion to withdraw his plea.

¶144 "Whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact that is reviewed independently. 'In making this determination, this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous.'" Taylor, 347 Wis. 2d 30, ¶25 (citation omitted).

¶145 The court's finding that Finley knew the maximum penalty he faced at the time he entered his plea is not clearly erroneous. The evidence in the record supporting this finding, now including additional evidence provided by the testimony of Finley's attorney——the fact that Finley was given a copy of the information; the representation by Finley's attorney in court that he had given Finley a copy of the information and had reviewed with Finley the nature of the charges against him and the maximum applicable penalties; Finley's waiver of a formal reading of the information; testimony from Finley's own attorney that, to the best of the attorney's knowledge, Finley was aware of the maximum applicable penalties the day before his plea hearing; the fact that the plea agreement eventually reached between Finley and the State stemmed from an offer made by Finley and his own attorney, an offer made before the plea questionnaire form was completed; the correct piecemeal explanation of the maximum applicable penalty at Finley's plea

27

hearing; Finley's failure to object at the plea hearing when the incorrect maximum applicable penalty was provided; the correct statement of the maximum applicable penalty on Finley's PSI; Finley's failure to object to that statement despite his other PSI-related objections; and Finley's failure to object at sentencing to the sentence he was given by the circuit court——is overwhelming. See, e.g., State v. Denson, 2011 WI 70, ¶73, 335 Wis. 2d 681, 799 N.W.2d 831; State v. Hoppe, 2009 WI 41, ¶50, 317 Wis. 2d 161, 765 N.W.2d 794.

¶146 As if this were not enough, the record demonstrates a history of deceitful behavior on the part of Finley. Early on in the case, Finley's competency was examined by Dr. Richard Hurlbut and by Dr. James Armentrout. Although Dr. Hurlbut concluded "to a reasonable degree of professional certainty that [Finley] . . . lack[ed] the substantial mental capacity to understand the proceedings and assist in his own defense," Dr. Armentrout concluded "to a reasonable degree of professional certainty" that Finley was "malingering cognitive disability in an attempt to evade legal accountability for his charged offenses," and that Finley did not "lack competency to proceed in court." Dr. Armentrout later testified,

> Malingering refers to the intentional production or exaggeration of symptoms of either physical or psychological problems with the motivation to gain something the person wants to gain. . . . And in this case certainly I thought Mr. Finley was doing that because he hoped to evade accountability for the charges that had been made against him.

The circuit court eventually stated that it accepted the testimony of Dr. Armentrout and made a finding that Finley was

competent to proceed. At sentencing, the State reminded the circuit court of the "incompetency sort of fiasco that we all went through."

¶147 Finally, at sentencing, the circuit court noted Finley's "twenty to thirty aliases" and concluded that these aliases indicated Finley was "willing to change [his] name to try to avoid responsibility." It also noted Finley's "criminal record that goes back into the mid-1990's."

¶148 These additional facts about Finley's character, combined with the other evidence in the record already discussed, establish that it was entirely reasonable for the circuit court, which had spent extensive time with Finley, to have concluded that Finley was not telling the truth about what he knew at the time of his plea hearing.[9] Again, the circuit court's determination is entitled to deference. See, e.g., Moonen v. Moonen, 39 Wis. 2d 640, 646, 159 N.W.2d 720 (1968) ("The trial court is in better position than the supreme court to make a judgment concerning credibility and a judgment so made should not be disturbed."); Onalaska Elec. Heating, Inc. v. Schaller, 94 Wis. 2d 493, 501, 288 N.W.2d 829 (1980) ("It is

---

[9] Finley claimed he did not know the applicable maximum penalty at the time he entered his plea. The court found that he did, and thus implicitly found Finley's claim not credible. See State v. Echols, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1993) ("Where it is clear under applicable law that the trial court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant the relief is tantamount to an express finding against the credibility of the defendant" (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1983).).

29

well established that when the trial judge acts as the finder of fact, he is the ultimate arbiter of the credibility of the witnesses when there is a conflict in the testimony, and his findings will be sustained unless they are against the great weight and clear preponderance of the evidence. Also when more than one reasonable inference can be drawn from the evidence, this court is obliged to support the finding made by the trial court."); Trible v. Tower Ins. Co., 43 Wis. 2d 172, 180, 168 N.W.2d 148 (1969) ("The trial court obviously believed the testimony of the plaintiff. It was his function to determine the credibility of the witnesses.").

¶149 In sum, although Finley was not entitled to an evidentiary hearing, he was granted one. The circuit court determined subsequent to that hearing that Finley actually knew the correct penalty at the time he offered to enter a plea. This finding was not clearly erroneous, and should not be upset.[10] Given this finding, there is no basis for concluding that Finley's plea was anything but knowing, intelligent, and voluntary.

---

[10] Although the State now agrees with Finley that Finley did not know the maximum applicable penalty at the time of his plea, the State did not do so below, and the circuit court found that Finley knew the maximum applicable penalty. In conducting our inquiry in this case, "this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous." State v. Taylor, 2013 WI 34, ¶25, 347 Wis. 2d 30, 829 N.W.2d 482 (emphases added) (citation omitted). The circuit court's finding has never been displaced; the court of appeals did not determine that the finding was clearly erroneous. State v. Finley, 2015 WI App 79, ¶23, 365 Wis. 2d 275, 872 N.W.2d 344.

### C. Plea Withdrawal Is Not The Only Available Remedy In This Case.

¶150 Finally, even if this court were to discard the record in this case and accept that Finley did not know the maximum applicable penalty at the time he entered his plea, plea withdrawal is not the only available remedy in this case. Specifically, the circuit court's decision to reduce Finley's term of imprisonment to the amount he was told he could receive, 19.5 years, remedied any error that had occurred.[11] A number of propositions, considered together, explain why a sentence-reduction remedy best fits the alleged wrong that occurred in this case.

¶151 First, the "high standard" that must be met by defendants wishing to withdraw pleas after sentencing——proof by clear and convincing evidence that refusal to allow withdrawal would result in a manifest injustice——stems from the State's interest in the finality of convictions. State v. Black, 2001 WI 31, ¶9, 242 Wis. 2d 126, 624 N.W.2d 363 (citations omitted). In other words, we do not uproot convictions without adequate reason. If there is a means of correcting errors below without

---

[11] The plea questionnaire and circuit court informed Finley he faced a potential of "19 years, 6 months confinement." While the word "confinement" might be construed to mean initial confinement, Finley's postconviction motion confirms that he understood it to mean "term of imprisonment," as he requested in that motion "that the court enter an order permitting Finley to withdraw his no contest plea; or alternatively, that the court modify the judgment of conviction to a maximum bifurcated sentence of 19.5 years, in keeping with the information Finley received at the plea hearing." (Emphasis added.)

disturbing a settled conviction and without violating the constitutional rights of the defendant, this court should not hesitate to use it. As is said in the broader context of the manifest injustice test, the question is "not . . . whether the circuit court should have accepted the plea in the first instance, but rather . . . whether the defendant should be permitted to withdraw the plea." State v. Cain, 2012 WI 68, ¶30, 342 Wis. 2d 1, 816 N.W.2d 177.

¶152 Second, although Bangert made clear that "[w]hen a defendant establishes a denial of a relevant constitutional right, withdrawal of the plea is a matter of right," Bangert, 131 Wis. 2d at 283 (emphasis added), we also explained in Cross that "the great weight of authorities from other state and federal courts reject the notion that the failure to understand the precise maximum punishment is a per se due process violation." Cross, 326 Wis. 2d 492, ¶33. Likewise, Bangert stated that, although a violation of Wis. Stat. § 971.08 "may have constitutional ramifications," such a violation is "itself not constitutionally significant." Bangert, 131 Wis. 2d at 261 n.3 (emphasis added).

¶153 There is a principle present in both Cross and Taylor——namely, that incorrect or insufficient knowledge about an aspect of a plea does not necessarily invalidate the entire plea——that this court should apply here. In Cross, for instance, in explaining that a "defendant who has been told a maximum punishment higher, but not substantially higher, than that authorized by law, has not necessarily made a prima facie

32

case that the requirements of [Wis. Stat.] § 971.08 and our case law have been violated," we reasoned that "a defendant who believes he is subject to a greater punishment is obviously aware that he may receive the lesser punishment. Thus, [a] defendant . . . who was told he faced 19 years, six months maximum exposure, was certainly aware that he faced 16 years imprisonment." Cross, 326 Wis. 2d 492, ¶¶30-31. And in Taylor where, again, the defendant was verbally informed of the maximum applicable penalty for the charge of uttering forgery, but not of the additional two-year repeater penalty, we stated:

> We reject [the defendant's] argument──that because he was not specifically, verbally advised by the circuit court at the plea hearing of the potential, additional two-year term of imprisonment from the alleged repeater, his entire plea is not knowing, intelligent, and voluntary──because he did in fact plead knowingly, intelligently, and voluntarily to the underlying crime of uttering a forgery. At the plea hearing, the court did verbally inform [the defendant] that he faced a maximum term of imprisonment of six years for the underlying charge of uttering a forgery.

Taylor, 347 Wis. 2d 30, ¶45.

¶154 Finally, "[t]he concern of due process is fundamental fairness. '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" State v. Chamblis, 2015 WI 53, ¶54, 362 Wis. 2d 370, 864 N.W.2d 806. The "arid logic" of the majority opinion, see North Carolina v. Alford, 400 U.S. 25, 39 (1970)──the formulaic assessment that two misstatements in the record, plus Finley's allegation that he did know the omitted information, plus a lack of argument from the State on appeal that Finley knew the

33

omitted information, equals automatic plea withdrawal——is inconsistent with these maxims.

¶155 In summary, three propositions are relevant here: (1) we do not permit withdrawal of plea without adequate reason; (2) failure of a defendant to understand the precise maximum punishment is not a per se due process violation, and incorrect or insufficient knowledge about an aspect of a plea does not necessarily invalidate the entire plea; and (3) due process is flexible and calls for such procedural protections as the particular situation demands. These propositions suggest the appropriate remedy: reduce Finley's sentence to that which he alleges he knew he could receive, a 19.5-year term of imprisonment. "In order to prevent the continuation of unjust sentences, the circuit court has inherent authority to modify a sentence." State v. Ninham, 2011 WI 33, ¶88, 333 Wis. 2d 335, 797 N.W.2d 451. And reduction cures any "manifest injustice"—— Finley does not receive a sentence lengthier than he was informed he could receive and which he believed he could receive at the time he entered his plea. Finley can then be said to have had an "understanding of . . . the potential punishment if convicted" at the time he entered his plea. Wis. Stat. § 971.08(1)(a).

¶156 The propriety of this solution is confirmed by the fact that this precise remedy has been used by this court in the past. In Preston v. State, the defendant was erroneously informed by the circuit court that he could receive a maximum sentence of 20 years on an attempted murder charge; the

34

defendant eventually received a sentence of 25 years. Preston v. State, 58 Wis. 2d 728, 729, 206 N.W.2d 619 (1973) (per curiam). We stated:

> Under the circumstances of this case, this error reaches constitutional proportions . . . . [S]ince the defendant was informed prior to his plea that he could receive a maximum sentence of only [20] years on the attempted murder charge, fundamental fairness requires that he not receive a greater sentence on that charge.

> The sentence imposed on the attempted murder charge is hereby reduced from [25] years to [20].

Id. at 729-30 (citation omitted). In Garski v. State, 75 Wis. 2d 62, 248 N.W.2d 425 (1977), we discussed the requirement "that the defendant be informed of the full range of statutorily authorized penalties for commission of the crime charged, particularly the maximum sentence possible," Garski, 75 Wis. 2d at 76 (citation omitted), and cited Preston for the proposition that "where a trial court misinforms the defendant as to the maximum penalty in accepting a guilty plea, the court cannot then impose a greater sentence than that of which he was informed." Id. (citation omitted).

¶157 We also explained that the statement above regarding the requirement that a defendant be provided with information about the "maximum sentence possible" derived from an interpretation of the standard set forth in State v. Reppin, 35 Wis. 2d 377, 385 n.2, 151 N.W.2d 9 (1967) (which was in turn taken from a list of standards promulgated by the American Bar Association) that "a defendant might be permitted to withdraw his plea of guilty if he is able to prove by clear and convincing evidence that his plea was made under the following

35

circumstances: '(3) the plea . . . was entered without knowledge . . . that the sentence <u>actually imposed</u> could be imposed.'" <u>Garski</u>, 75 Wis. 2d at 75-76 (emphasis added) (citation omitted). The phrasing of this standard is notable for present purposes, because if a defendant's sentence is reduced to that which he believed he could receive, then his plea is no longer one "entered without knowledge . . . that the sentence actually imposed could be imposed."

¶158 Our plea withdrawal procedures may have changed since <u>Preston</u> and <u>Garski</u>, but the constitutional guarantee of due process has not. This court should use the remedy set forth in <u>Preston</u> in this case.

¶159 Further, reducing Finley's sentence to what he was told he could receive is perfectly consistent with the logic of <u>Taylor</u>: a "defendant's plea [is] entered knowingly, intelligently, and voluntarily when the record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received." <u>Taylor</u>, 347 Wis. 2d 30, ¶8. If Finley's sentence is reduced, then he both knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received.

¶160 Finally, a sentence-reduction remedy finds analogy in this court's decision last year in <u>Chamblis</u>. In that case, we assumed without deciding that a circuit court had erred in excluding evidence that might have changed the charge faced by the defendant from operating with a prohibited alcohol

36

concentration ("PAC") as a sixth offense to operating with a PAC as a seventh offense and that might have enhanced the applicable penalty from a maximum of 6 years imprisonment to a maximum of 10 years imprisonment. Chamblis, 362 Wis. 2d 370, ¶¶1-5. Nevertheless, we concluded that the court of appeals' proposed remedy——"remanding the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense"——violated the defendant's right to due process. Id., ¶¶6, 40. The defendant "entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense," we explained, and "[b]ecause a seventh offense carries a greater range of punishment than does a sixth offense, the court of appeals' remedy renders [the defendant's] plea unknowing, unintelligent, and involuntary." Id., ¶6. In effect, we recognized that although the defendant should have faced a maximum of 10 years, rather than 6 years, we would allow the defendant to keep his 6-year-maximum plea because that was the maximum he believed he could receive. The corollary of this holding is that where, as here, the defendant should have faced a maximum of 23.5 years imprisonment, rather than 19.5 years, we can allow the defendant to "keep" the 19.5-year-maximum sentence he was informed he might receive by reducing the sentence to that amount.

¶161 The State's proposed remedy in this case also comports with precedent outside of Wisconsin. See, e.g., United States v. Perez-Carrera, 243 F.3d 42, 42-44 (1st Cir. 2001) (defendant

37

who was misinformed that a count carried a mandatory 5-year penalty rather than a mandatory 10-year penalty and who was sentenced was not entitled to withdraw his plea; the district court was instructed, on remand, to modify the sentence imposed by reducing the incarcerative term to 5 years); Moore v. United States, 592 F.2d 753, 754-56 (4th Cir. 1979) (defendant who claimed he understood maximum penalty for offense to be 15 years and who was sentenced to 15 years imprisonment plus a 3-year special parole term not entitled to withdraw plea; court remanded to district court to allow it, in its discretion, to either reduce the prison sentence to 12 years such that "the combined sentence of prison and parole will correspond to what [the defendant] claims he understood to be the maximum penalty," or to allow the defendant to "set aside the plea and allow [the defendant] to plead again.").

¶162 Plea agreements are often referred to as plea "bargains." E.g., Chamblis, 362 Wis. 2d 370, ¶56. If Finley indeed was unaware of the maximum applicable penalty, he should not be deprived of the "benefit of his bargain"——he is entitled to some kind of remedy. Id., ¶55. But that does not mean that Finley is entitled to plea withdrawal.

¶163 Finley alleges he pleaded no contest with the understanding that he would not be sentenced to more than a 19.5-year term of imprisonment. He was sentenced to a 23.5-year term of imprisonment. Assuming that Finley actually did not know the maximum applicable penalty, I would affirm the circuit court's decision to reduce Finley's sentence to a 19.5-year term

38

of imprisonment, which eliminates any "manifest injustice" that might result in refusing to allow Finley to withdraw his plea. I do not join the majority, which concludes that plea withdrawal is the only appropriate remedy, and which therefore "embrace[s] a formalistic application of the Bangert requirements" without proper regard for what the Constitution actually requires in this scenario. Cross, 326 Wis. 2d 492, ¶32.

### III

¶164 The majority's decision to allow Finley to withdraw his plea is particularly tragic given the circumstances of this case. In a letter to the circuit court prior to sentencing, K.A.G.'s father wrote, "[P]lease help [K.A.G.] and our family heal by issuing the maximum penalty allowed by law. . . . I cannot describe to you how this would help my daughter. It would give all of us faith in the justice system . . . ."

¶165 Further, the circuit court below considered the need to protect the public "the most significant factor in this case." The court told Finley:

I believe your next victim will not survive. . . .

[T]he fact that you keep endearing yourself to these women who then will allow you to father their children and you go from one to one to the next to the other, and you've got this history of violence and being abusive to them . . . tells me that you're going to find another woman. . . .

And my fear is your next victim will not survive. . . .

I cannot impose a sentence on you that allows you to get back on the streets and have another victim.

39

¶166 Perhaps it goes without saying, but it has now been five years since the complaint in this case was filed. Quite obviously, the decision of the court——that Finley is allowed to start over——may very well raise significant issues as to whether this case can even be tried. Concluding that this is a constitutional violation and that plea withdrawal is the remedy may have profound impact on the viability of the case. The reality, however, highlights the need for courts and counsel to get it right.

¶167 I do not join the majority opinion because I would not allow Finley to withdraw his plea of no contest, for three reasons. First, the two misstatements in this case as to the maximum penalty applicable to Finley's plea, taken together, do not constitute a Bangert violation. Second, even if a Bangert violation could be said to have occurred in this case, the circuit court's finding subsequent to the Bangert hearing that Finley knew the maximum applicable penalty is not clearly erroneous. Third, even if a Bangert violation could be said to have occurred in this case, and even if the circuit court's finding subsequent to the Bangert hearing that Finley knew the maximum applicable penalty is clearly erroneous, plea withdrawal should not be the only available remedy; Finley's sentence can be reduced to a 19.5-year term of imprisonment. The entirety of the record in this case demonstrates that Finley's motion is really based upon the fact that he did not receive the sentence he hoped he would receive pursuant to his plea negotiations.

¶168 For the foregoing reasons, I respectfully dissent.

40

¶169 REBECCA G. BRADLEY, J. *(dissenting).* We are asked to decide whether Finley should be allowed to withdraw the plea that he entered on June 25, 2012 pursuant to a plea agreement he not only made but actively negotiated. In exchange for a plea of no contest to one count of first-degree reckless endangerment as an act of domestic abuse, while using a dangerous weapon and as a repeat offender, the State agreed to dismiss and read-in three additional domestic abuse charges: substantial battery, strangulation and suffocation, and false imprisonment. The criminal complaint and information contained the correct range of punishment: first-degree reckless endangerment carried the potential maximum penalty of up to twelve years, six months and a fine of not more than $25,000; the use of a dangerous weapon added up to an additional five years and because he was charged as a repeat offender, he could receive up to another six years. No cumulative total was listed in the complaint or information. The plea questionnaire did list the "maximum penalty" "upon conviction" as "19 years, 6 months <u>confinement</u> and $25,000 fine and court costs." (Emphasis added.) Adding together 12.5 + 6 + 5, the correct total maximum sentence including both confinement and extended supervision is 23.5 years.

¶170 At the plea hearing, the circuit court established Finley's understanding of the range of punishments at issue when it specifically referred to each crime's range by asking Finley to confirm he understood the maximum of each charge:

> THE COURT: The maximum penalty for the offense would be a fine of not more than twenty-five thousand or imprisonment for not more than twelve years six months or both.

1

MR. FINLEY: Yes sir.

. . .

THE COURT: . . . Then because you are a repeater, then they could increase the incarceration period by not more than an additional six years. And they are basing the repeater enhancement provision on the fact that you were convicted of possession of cocaine as a subsequent offender on September 12th, 2008, in Brown County. Do you remember those felonies?

MR. FINLEY: Yes, sir.

THE COURT: Okay. And they are also charging that you used a dangerous weapon. And for the enhancement provision of using a dangerous weapon, then the term of imprisonment can be increased by not more than five years for that. Do you understand that then?

MR. FINLEY: Yeah.

¶171 This recitation correctly informed Finley of the maximum range of punishments for each of the crimes to which he was pleading. The circuit court, however, went on to recite an incorrect confinement cumulative total by referring to the 19.5 years listed on the plea questionnaire: "So, the maximum you would look at then nineteen years six months confinement. Do you understand the maximum penalties?" Finley answered, "Yes, sir."

¶172 The circuit court accepted Finley's plea. Finley returned to circuit court on October 19, 2012 for sentencing. The circuit court determined based on the proper sentencing factors that Finley should be sentenced to the maximum. This time, however, the circuit court added the numbers correctly and imposed a 23.5 year sentence, consisting of 18.5 years' initial confinement followed by 5 years' extended supervision. There were no objections by Finley at sentencing to the maximum

2

sentence of 23.5 years, even though the circuit court, after imposing the sentence, asked Finley's lawyer if there was anything the court did not consider or Finley would like addressed.

¶173 Finley filed a postconviction motion seeking two remedies: (1) plea withdrawal or (2) commutation of his sentence from 23.5 years to 19.5 years. The circuit court, based on its review of the portion of the plea hearing where Finley acknowledged he understood the correct individual maximum punishments, denied the motion:

> I'm satisfied the defendant has not made a prima facie case that the plea was made anything but knowingly and voluntarily. I think he knew fully well. I think if you look at that transcript, I went piecemeal by piecemeal, twelve point five, five, six, I went through exactly why it was being added on. He knew his base and he knew exactly each reason why the numbers would be added on. They are consistent with the information placed in the information.
>
> Now, in essence what he wants to claim is, oh, in that case it should get me out of this plea. I think where the information is provided clearly orally, and I think I'm required to provide the length of the sentence orally. . . .
>
> So, I orally have him sitting in that chair exactly right there. We are this distance apart, and I went over the base penalty and the reason why he was receiving each of the enhancements and what the enhancement was. Now, clearly he hasn't made a prima facie case to this Court that he didn't make that plea knowingly and voluntarily.

The circuit court also denied Finley's request to commute the sentence.

¶174 Finley appealed the circuit court's decision to the court of appeals, which held Finley made a prima facie case

3

because the two references to the 19.5 years of confinement constituted a Bangert deficiency.[1] It remanded the case to the circuit court for an evidentiary hearing to give the State the chance to prove despite the Bangert violation, Finley entered his plea knowingly, intelligently, and voluntarily. See State v. Finley, No. 2013AP1846-CR, unpublished slip op., ¶16 (Wis. Ct. App. Mar. 18, 2014) (per curiam). This step is required to ensure a defendant does not "game the system by taking advantage of judicial mistakes." See State v. Brown, 2006 WI 100, ¶37, 293 Wis. 2d 594, 716 N.W.2d 906.

¶175 Upon remand, the circuit court held the hearing as directed. The State called Finley's trial counsel to testify. He testified:

- A number of plea proposals went back and forth and he remembers meeting with Finley in the county jail the day before the plea hearing.

- Finley did not like the plea proposal from the State because he wanted to be eligible for the Challenge Incarceration or Earned Release Programs. Finley made a counter proposal to plead to a charge that would make him statutorily eligible even though Finley's proposal carried higher maximum penalties than what the State had proposed.

- He specifically remembers discussing with Finley the day before the hearing that Finley's proposal carried a

---

[1] See State v. Bangert, 131 Wis. 2d 246, 260-62, 389 N.W.2d 12 (1986).

4

higher maximum penalty and he would not have a client plead unless the client was aware of the maximum exposure.

The prosecutor questioned Finley's trial lawyer further on this:

Q    So, that would have been something you would have covered with him so he knew, okay, you may become eligible, but now you are looking at this specific exposure; is that correct?

A    Yes.

Q    And on that date is there any reason to believe that you didn't give him the correct maximum exposure?

A    No.

Q    You did not do the plea form on that date; is that correct?

A    No.  Because we didn't have any chance on a Sunday evening to discuss the matter with [the prosecutor].

Q    So, to the best of your knowledge, the day before when he was willing to plead to this charge with these enhancers, he was fully aware of the maximum potential penalties?

A    Yes.

Q    At the plea hearing at the time the [circuit court], utilizing the document that was incorrect, indicated the potential maximum sentence, did the defendant turn to you and say, wow, that's lower than what you told me?

A    He said something to me.  I don't recall what.

Q    But the evening before he had already been told the correct amount, that would have been your practice?

A    That would have been my practice.

5

Q    And you, of course, were present in the courtroom
     when the Judge detailed the correct maximum
     penalties separately which were just hearing the
     numbers; is that correct?

A    Yes.

Q    So, as you entered into the plea hearing, would
     it be your opinion at this point in time that the
     defendant was fully apprised of the maximum --
     correct maximum exposure?

A    That would be my practice, yes.

¶176 Cross-examination of Finley's attorney, as material,

provided:

Q    [Counsel], do you have a specific recollection of
     telling Mr. Finley the maximum penalties in this
     case?

A    Not a specific recollection, no.

      . . .

Q    Now, I would draw your attention to the
     understandings where it says, "The maximum
     penalty I face upon conviction is nineteen years
     six months confinement and $25,000 fine and court
     costs." That's typewritten, correct?

A    The nineteen -- yes.

Q    It was typed in. Where the math came from, I
     have no idea.

Q    I just mean --

A    I've racked my brain to try and figure out where
     that number came from. I have no recollection.

¶177 Finley's lawyer continued that he believed someone

from his office typed that information on the form as well as

the information regarding the plea agreement:

Plea to count one as charged. State will dismiss and
read in the remaining charges in 2011 CF 671 as well
as the charges in 2011 CM 953. The State will cap its

6

recommendation at ten years initial confinement. We are free to argue.

¶178 Finley's lawyer clarified that the State's cap was on <u>confinement</u> not the entire sentence, and then answered a series of questions about the last-minute plea negotiations, and whether he recalls when and where he went over the plea questionnaire form with Finley. Finley's lawyer did not remember the exact time or location. The cross-examination concluded with two questions and answers, which the court of appeals used in its decision:

Q    Would it be your practice when meeting with your
     client to go through the plea questionnaire line
     by line?

A    Yes.

Q    And when you got to the understandings, would it
     be your practice to read off for him the
     "nineteen years six months confinement"?

A    Yes.

¶179 Re-direct examination provided:

Q    But the plea form itself was not utilized when
     you met with him for this lengthy meeting the day
     before the plea hearing; is that correct?

A    No. It wouldn't have been prepared by then for
     the reason we didn't have the discussion with the
     [prosecutor].

Q    So, the erroneous amount of nineteen and a half,
     that was first introduced after the defendant had
     already proposed this offer to the State on the
     day of the plea hearing?

A    Yes.

¶180 In arguments, the State argued it had met its burden to prove Finley knowingly, intelligently, and voluntarily entered into the plea:

> The plea offer was from the defendant. It took place as negotiations were considered. It sounds like they were consider[ed], meeting took place where many factors had to be considered and really with the idea that you were trading the possibility of being eligible for a program and risking further exposure. Any defense attorney would make sure that the client was clear on that point.
>
> [Finley's lawyer] has been in these courts many many times, many many years. His usual practice would be, well, if you are willing to plead to this, you certainly need to know what the maximum is. There is no suggestion that he was given the wrong maximum on the date that he met with him to discuss what should they offer to [the prosecutor]. That's not at all in evidence.
>
> The sums are not difficult. There was not sixteen counts that one has to figure it all out. It was basic mathematics and presented, the record would indicate, based on his normal practice, correctly to the defendant. At the time the defendant said, yes, go offer this. This is what I plead to. So, at that point the State has established that he understood the maximums, the correct maximums, as he indicated he would plead to the charge as it was and see if [the prosecutor] would take that.
>
> . . . .
>
> It's unfortunate the wrong number got put down. [Finley's trial lawyer] doesn't remember the defendant at any point in time -- I don't see any record such as when the presentence was done where people were saying, well, wait a minute, we were expecting it to be much lower. The maximums are usually outlined in the presentence report.
>
> I don't remember and I haven't seen all the transcripts, but was there any exclamations when the sentence was given out, judge, you can't do that. We all thought it was going to be the nineteen because

8

nobody relied on that. It was an erroneous number that was just unfortunately set there. The defendant already knew the accurate penalty at the time he offered to make the plea.

¶181 Finley's postconviction lawyer then argued the State failed to prove Finley knew the correct maximum sentence and asked the court to consider commuting Finley's sentence under State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482:

> Now, I did want to also mention, Your Honor, the other issue that's been in this litigation that no court has ruled on yet, and that is that if this Court concludes that Mr. Finley -- I'm sorry. It's a separate type of relief based on Taylor. And that is that the Court was bound by the number that was given to Mr. Finley on the plea questionnaire and out loud in court, that being nineteen and a half years.
>
> The claim is based on a footnote in this Taylor decision. It's suggested that -- well, the problem in Taylor was a different one than the one here. The Court seemed to suggest in this footnote that if the defendant is told a number, that's the most he can get. It's a little unclear to me what the Supreme Court meant when they said that.
>
> It's -- let's see if I can find it -- actually it's paragraph 40, I believe, of the decision. And what they seem to be saying is that if the defendant -- just to use a hypothetical, let's say the real maximum penalty is twenty years and the defendant is told the maximum is fifteen years and gets fourteen years, that there would be no problem with that because he got less than he was told. By suggestion they are saying that if he gets more than what he was told, the sentence must be commuted to what he was informed. I have not seen any cases since Taylor that deal with that issue, but I think that it is one that's suggested by the decision.
>
> So, if the -- however, the Court rules on our motion to withdraw his plea, and that is what Mr. Finley wants, wishes to withdraw his plea, that there is also this other issue that the sentence should be commuted to a total of nineteen and a half years

bifurcated between both initial confinement and extended supervision.

¶182 At this point, the circuit court asked if it would have to deny Finley's motion to withdraw his plea in order to reduce his sentence to the amount he was told at the plea hearing. Finley's postconviction lawyer asked for a short recess to speak with Finley. After the recess, Finley's lawyer withdrew "the second claim based on Taylor" and explained "Mr. Finley is maintaining that he would like to withdraw his plea and so that is the only claim that we are making." The circuit court asked the State its position on this, and the State advised that "if the Court is going to rule that we haven't met our burden," "[b]ased on the Taylor case, we would ask [the sentence] be modified as such."

¶183 The circuit court then denied the motion to withdraw the plea and ordered Finley's sentence modified to 19.5 years, consisting of 14.5 years of initial confinement followed by 5 years of extended supervision. There were no objections and Finley's lawyer offered to prepare an order.

¶184 The written order following this hearing contained the following:

- "The Court now finds that the State met its burden of establishing that Finley knew the maximum penalty he faced at the time he entered his plea. However, the Court also believes that it is in the interest of justice to commute Finley's sentence to the maximum represented to him by the Court at the time of sentencing."

10

- "While the Court is satisfied based on the testimony of [Finley's trial lawyer] that Finley actually knew the correct penalty at the time he offered to enter a plea, the Court erred when it told Finley that 19.5 years was the maximum penalty possible and then imposed a sentence in excess of that amount. Therefore, the Court believes that it is in the interest of justice to commute Finley's sentence to the maximum represented to him at the time of sentencing."

¶185 Finley appealed a second time to the court of appeals, which reversed the circuit court's determination that the State proved Finley knew the correct maximum and that he entered a knowing, intelligent, and voluntary plea. See State v. Finley, 2015 WI App 79, 365 Wis. 2d 275, 872 N.W.2d 344. Its reversal was based on two things: (1) it suggested the circuit court's finding that Finley was aware of the correct maximum penalty was clearly erroneous; and (2) the State's appellate argument focused on its request for a new remedy in plea withdrawal cases where the error relates only to the correct maximum penalty——commutation of the sentence to the amount the defendant was told. Id., ¶¶2-3, 22-23, 32. The court of appeals reversed the circuit court and ordered plea withdrawal.

¶186 We accepted the State's petition for review and heard oral argument in this case on April 7, 2016. At oral argument, the assistant attorney general (AAG) representing the State did not remember that the circuit court found that Finley entered his plea knowingly, intelligently, and voluntarily or that the

11

circuit court found Finley knew the correct maximum at the plea hearing. The AAG was not interested in discussing that issue, but instead argued for an alternative remedy under the circumstances here——that of sentence commutation rather than plea withdrawal.

¶187 I would reverse the court of appeals' decision ordering plea withdrawal. My position is based on: (1) the circuit court finding that the State proved Finley knew the correct maximum sentence at the time of the plea hearing through the testimony of his trial lawyer; and (2) this court's duty to apply the pertinent law to the facts of record in this case even when a party's attorney is not well-versed in the record and not interested in discussing the dispositive issue.

## I. APPLICABLE LAW

¶188 A defendant seeking to withdraw a plea after sentencing must prove by clear and convincing evidence that withdrawal is required to prevent a manifest injustice. See Brown, 293 Wis. 2d 594, ¶18. Plea withdrawal is within the discretion of the circuit court. See State v. Garcia, 192 Wis. 2d 845, 860, 532 N.W.2d 111 (1995). The manifest injustice test is satisfied if a plea was not knowingly, intelligently, and voluntarily entered. Brown, 293 Wis. 2d 594, ¶18. This presents an issue of constitutional fact. Id., ¶19. "We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous but we determine independently whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary." Id.

12

¶189 Wisconsin Stat. § 971.08 and <u>State v. Bangert</u>, 131 Wis. 2d 246, 260-62, 389 N.W.2d 12 (1986), establish duties to ensure a defendant enters a knowing, intelligent, and voluntary plea. <u>Brown</u>, 293 Wis. 2d 594, ¶23. Wisconsin Stat. § 971.08 provides:

> (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
>
> (d) Inquire of the district attorney whether he or she has complied with s. 971.095 (2).

When a defendant files a motion to withdraw a plea, after sentencing, based on an allegedly deficient plea colloquy, the motion is reviewed to determine whether the defendant has established a prima facie violation of Wis. Stat. § 971.08 or <u>Bangert</u>, and whether the defendant has alleged he or she "did not know or understand the information that should have been provided at the plea hearing." <u>Brown</u>, 293 Wis. 2d 594, ¶39. If the defendant meets both burdens, "the court must hold a postconviction evidentiary hearing at which the state is given an opportunity to show by clear and convincing evidence that the

13

defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." Id., ¶40. If the State meets its burden, the circuit court denies the defendant's motion for plea withdrawal. Id., ¶41. If the State does not meet its burden, the circuit court grants the defendant's motion for plea withdrawal unless the circumstances fall under Wis. Stat. § 973.13, State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, or Taylor, in which case the sentence may stand or be modified. Wisconsin Stat. § 973.13 provides:

> Excessive sentence, errors cured. In any case where the court imposes a maximum penalty in excess of that authorized by law, such excess shall be void and the sentence shall be valid only to the extent of the maximum term authorized by statute and shall stand commuted without further proceedings.

¶190 Cross involved a defendant who was incorrectly told the maximum penalty was 40 years total with a maximum of 25 years' initial confinement. Cross, 326 Wis. 2d 492, ¶1. The correct maximum was 30 years total with a maximum of 20 years' initial confinement. The circuit court sentenced Cross to 40 years, but after Cross's postconviction motion for plea withdrawal pointed out the error, the circuit court modified the sentence to 30 years with 20 years of initial confinement. Id., ¶2. We held that despite the incorrect information, Cross's plea was knowing, voluntary, and intelligent and there was no Wis. Stat. § 971.08 or Bangert violation. We also upheld the modified sentence because no manifest injustice occurred. Cross, 326 Wis. 2d 492, ¶¶3-5. We did observe in Cross that

14

when the misinformation on the maximum sentence is "significant, or when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established" and if that is the case, the burden shifts to "the State to prove at an evidentiary hearing that the plea was knowing, voluntary, and intelligent." Cross, 326 Wis. 2d 492, ¶39.

¶191 Taylor involved a defendant who faced a maximum penalty of six years on the underlying charge, plus two additional years for a repeater enhancer. Taylor, 347 Wis. 2d 30, ¶1. At the plea hearing, the circuit court told Taylor the maximum penalty was six years and referred to the repeater enhancer, but did not specifically explain it added an additional two years. Id., ¶2. Nonetheless, we concluded that the plea in Taylor was knowing, voluntary, and intelligent because the circuit court informed Taylor of the repeater enhancer at the plea hearing, Taylor understood he was charged with the repeater enhancer, the record demonstrated that Taylor knew the repeater enhancer could tack on an additional two years, and ultimately he was only sentenced to six years. Id., ¶42.

## II. ANALYSIS

### A. Circuit Court's Finding

¶192 The circuit court, after conducting the evidentiary hearing, specifically found that the State proved Finley knew the correct maximum penalty and entered his plea knowingly, intelligently, and voluntarily. In addition, the circuit court

15

modified Finley's sentence to a term of 19.5 years. This, in my opinion, should end the matter and result in reversal of the court of appeals and a denial of Finley's request to withdraw his plea.

¶193 The circuit court's finding is not clearly erroneous as the direct testimony of Finley's lawyer supports it. Finley's lawyer testified that Finley proposed the plea he took and that Finley knew the maximum penalty associated with that proposal. Finley's lawyer testified about how Finley's proposal carried a longer sentence than the one proposed by the State but Finley chose the lengthier sentence with the hope of being eligible for Challenge Incarceration and other programs. The testimony elicited on cross-examination, although inconsistent with the direct testimony, does not operate to erase the direct testimony or the circuit court's reliance on it. The circuit court saw and heard Finley's lawyer testify live. It observed the demeanor, facial expressions, tone, and inflection of Finley's lawyer. It assessed whether Finley's lawyer's answers were an emphatic or reluctant "yes" as to whether Finley knew the correct maximum. The circuit court, as the factfinder here, is in a better position to assess credibility and resolve any inconsistencies in the testimony. This is why appellate courts defer to the factfinder on witness credibility. See Gauthier v. State, 28 Wis. 2d 412, 415, 137 N.W.2d 101 (1965). An appellate court should not substitute its judgment unless the circuit court relied on "inherently or patently incredible" evidence. Id. at 416. As an appellate court, we review a black and white

transcript of words. This puts us at a disadvantage in assessing credibility and resolving inconsistencies. Id. Here, the circuit court found Finley's lawyer's direct testimony credible to show Finley knew the correct maximum despite the double reference to "19.5 years confinement." Finley's lawyer explained why: it was Finley's proposal, they had a lengthy discussion about it, it was his normal practice, and he specifically remembers discussing the penalties with Finley. Further, the record shows no objection, discussion, or confusion when the sentencing court imposed 23.5 years instead of 19.5. The reasonable inference from the record suggests that both Finley and his lawyer knew 23.5 was the correct amount.[2]

---

[2] Although my position does not require an analysis of State v. Cross, 2010 WI 70, 326 Wis. 2d 492, 786 N.W.2d 64, or State v. Taylor, 2013 WI 34, 347 Wis. 2d 30, 829 N.W.2d 482, or the fact the incorrect 19.5 referred only to confinement rather than the full sentence, I address them briefly. The plea questionnaire and the reference to it at the plea hearing note that the maximum penalty Finley faced was 19.5 years of confinement. While this amount was wrong, it was only off by one year, not four, because it referred to confinement time, not total length of sentence. Finley's total length of sentence was 23.5 years, which consisted of a maximum of 18.5 years of confinement and 5 years of extended supervision. Moreover, the correct individual amounts were accurately described and acknowledged by Finley. Like the defendants in Cross and Taylor, Finley knew the amount he faced and entered a knowing, intelligent, and voluntary plea. Under such circumstances, Finley's due process rights were not violated and no manifest injustice occurred; consequently, the circuit court did not erroneously exercise its discretion when it denied Finley's plea withdrawal motion.

17

B. Our Duty to Follow the Law

¶194 The law is clear in this case. The circuit court found the State met its burden of proving Finley knew the correct maximum and entered his plea knowingly, intelligently, and voluntarily. That finding is not clearly erroneous. It was based on the testimony of Finley's trial lawyer who negotiated the plea and would certainly be the one to know if Finley had the correct penalty information at the time of his plea. Thus, under Bangert and Brown, that ends the matter. Finley is not entitled to withdraw his plea. How the AAG handled or argued this case on appeal does not alter the law. Although we are entitled to accept concessions by a party, we are not required to do so. See State v. St. Martin, 2011 WI 44, ¶13 n.6, 334 Wis. 2d 290, 800 N.W.2d 858 (we are "not bound by the parties' interpretation of the law or obligated to accept a party's concession [on the] law") (citation and one set of quotation marks omitted). Justice should not depend on how adeptly or ineptly a party's arguments are presented. It should depend on what the law is. Here, the law says a defendant may only withdraw a plea after sentencing if the defendant establishes a manifest injustice. A manifest injustice occurs when a plea is not entered knowingly, voluntarily, and intelligently. The circuit court, which is charged with deciding whether the State proved that Finley's plea was so entered, heard the testimony and argument and reached a reasonable determination based on the facts and law. It held that Finley did know the correct range of punishment because he discussed it with his trial lawyer the

18

night before the plea hearing and the range of punishment for the plea agreement Finley wanted was greater than that being proposed by the State.  The majority casts aside the circuit court's ruling as if it does not exist because the State meandered down a different path on appeal.  I will not do so.[3]

¶195 Accordingly, I respectfully dissent.

---

[3] It also appears to me that Finley played fast and loose with the system, which is something this court frowns upon. See State v. Petty, 201 Wis. 2d 337, 346-47, 548 N.W.2d 817 (1996). Finley argued in his postconviction motion, on his first appeal and through most of the evidentiary hearing that he wanted sentence modification under Taylor.  When it appeared the circuit court was leaning toward that remedy, Finley reversed course and insisted solely on a remedy of plea withdrawal. Although this scenario does not fit precisely into judicial estoppel, it definitely smells like an intentional manipulation of the judicial system. See Petty, 201 Wis. 2d at 346-47.